## Peter Sheehan, et al., t/a G & S Forest Products v. Department of Employment and Training

[733 A.2d 88]

No. 98-197

Present: Amestoy, C.J., Dooley, Morse, Johnson and Skoglund, JJ.

Opinion Filed June 11, 1999

*Peter W. Sheehan,* Pro Se, Perkinsville, Plaintiff-Appellant.

*Brooke Pearson,* Montpelier, for Defendant-Appellee.

**Morse, J.** Employer G & S Forest Products appeals from the Employment Security Board's decision sustaining the Department of Employment and Training's August 8, 1997 successor status determination.* In its appeal, employer seeks to challenge the Department's May 7, 1996 successor status determination with respect to employer's purchase of another business. Because the May 7, 1996 determination was upheld in an earlier Board decision from which employer failed to file a timely notice of appeal, we conclude that the doctrine of collateral estoppel precludes employer from challenging that determination in this appeal. Accordingly, we affirm the Board's decision.

As best as we can tell from the record and sporadic factual history related in the parties' briefs, Peter and Susan Sheehan and another couple, the Goodriches, were partners who operated a business called G & S Forest Products. The Department assigned employer a contribution rate of 0.6% for the 1995-1996 fiscal year. In April 1996,

---

* An individual or other entity succeeding to or acquiring the business of any employer is considered the successor to the former business for purposes of determining the rate at which the new employer will contribute to the unemployment compensation fund. See 21 V.S.A. § 1325(b)(1). The Commissioner of the Department of Employment and Training transfers the experience-rating record of the predecessor employer to the successor employer, who must then contribute to the unemployment compensation fund at a rate based on the experience record of either the predecessor employer or a combination of the predecessor and successor employers, depending on whether the successor employer is a new employer. See *id.*

employer stated in the Department's status report forms that it had acquired the entire business formerly known as Palmer H. Goodrich II/P & L Trucking. On May 7, 1996, the Department notified employer by letter that G & S Forest Products was designated as a successor to Palmer H. Goodrich II as of April 1, 1996. The letter stated that (1) the predecessor's experience rating record would be transferred to and combined with that of the successor; (2) the successor's assigned contribution rate would not change during the remainder of that fiscal year, but effective July 1, 1996 the successor's rate would be based on the combined experience rating records of the successor and predecessor; (3) the successor's experience rating record might be charged with benefits paid to individuals based on wages earned from the predecessor; and (4) if either the successor or predecessor disagreed with the successor status determination, either employer could petition for a hearing before a referee within thirty days of that notice. Employer did not seek to contest the notice of successor status determination contained in the letter.

On June 25, 1996, the Department sent employer a notice stating that its contribution rate for fiscal year 1996-1997 would be 5.3%. Employer appealed that determination first to the appeals referee and then the Board. The referee noted in his decision that employer objected to having inherited the experience rating record of Palmer H. Goodrich II, but ruled that the rating was final because the employer had failed to appeal the Department's May 7, 1996 successor status determination. On April 4, 1997, the Board issued a decision upholding the appeals referee. The Board expressly stated that in reaching its decision it had carefully considered employer's arguments concerning the Department's successor status determination. In rejecting those arguments, the Board explained that the Department had determined that employer purchased Palmer H. Goodrich II/P & L Trucking, which had always been considered one and the same employer. The Board expressed its satisfaction that the Department's determination of the status of the companies involved was correct. The Board also noted that employer had failed to appeal the successor status determination in a timely manner. Employer appealed the Board's decision, but in December 1997, this Court dismissed that appeal as untimely filed.

On June 25, 1997, the Department notified employer that its contribution rate for fiscal year 1997-1998 would be 4.1%. Effective July 1, 1997, the Sheehans and Goodriches split employer's assets, with the Sheehans continuing to operate G & S Forest Products and

the Goodriches taking over sole ownership of the trucking component of the business under the name P & L Trucking. Employer appealed the 1997-1998 contribution rate notice first to the appeals referee and then to the Board. In sustaining the decision of the appeals referee to uphold the assigned contribution rate, the Board rejected employer's arguments that (1) the May 7, 1996 successor status determination was erroneous; and (2) because employer had recently sold the part of the business whose acquisition had led to the increase in its contribution rate, employer was now entitled to a contribution rate based upon its experience rating record before its purchase of that part of the business. The Board noted that it had already addressed the first argument in its April 4, 1997 decision upholding the 1996-1997 contribution rate, and that in doing so, it had determined that the May 7, 1996 successor status determination was correct. In rejecting employer's second argument, the Board ruled that the Department had properly treated Palmer H. Goodrich II/P & L Trucking, which were sole proprietorships operated by the same person, as a single employer for purposes of assigning an employer contribution rate.

Meanwhile, on August 8, 1997, the Department notified the Sheehans and Goodriches that P & L Trucking, as a successor to G & S Forest Products, was assigned a contribution rate of 2.3% for fiscal year 1997-1998. This time as the predecessor business, employer appealed that determination to the referee and then the Board. Employer argued that it had incorrectly completed the forms upon which the initial May 7, 1996 successor status determination was made, and that in fact it had never been a full successor to the business formerly operated by Palmer H. Goodrich II. The referee ruled that the time for appealing any error in the May 7, 1996 successor status determination had long since passed. In addition to adopting the referee's conclusions, the Board concluded in its April 10, 1998 decision that under the circumstances of this case it was proper for employer to retain its entire experience rating record because such records are either retained or transferred in their entirety upon a change of ownership.

Employer appeals the April 10, 1998 decision, arguing that the Department's May 7, 1996 successor status determination was erroneous because employer had mistakenly stated in the Department's forms that it had acquired the entire predecessor business. Contending that the Department's May 7, 1996 notice did not adequately apprise employer that its contribution rate was going to change

dramatically, employer asserts that its failure to challenge the notice should not have precluded it from challenging the successor status determination in the context of its appeal of the Department's June 25, 1996 notice informing employer that its contribution rate would increase from 0.6% to 5.3%. According to employer, it had no reason to appeal the May 7, 1996 notice until it became aware of what was at stake.

Employer's arguments fail for the simple reason that employer was given the opportunity to challenge the Department's May 7, 1996 successor status determination in its appeal of the June 25, 1996 contribution rate notice. The record reflects that although the Board believed that employer was not entitled to review of the successor status determination because it had not timely challenged the May 7, 1996 notice, in its April 4, 1997 decision the Board did in fact consider and reject on their merits employer's arguments concerning the Department's initial successor status determination. Employer did not timely appeal that decision and thus is precluded under the doctrine of collateral estoppel from relitigating issues necessarily decided in that decision.

 Similar in effect but more narrow in scope than res judicata, the doctrine of collateral estoppel, also known as issue preclusion, "bars 'the subsequent relitigation of an issue which was actually litigated and decided in a prior case between the parties resulting in a final judgment on the merits, where that issue was necessary to the resolution of the action.'" *Berlin Convalescent Center, Inc. v. Stoneman*, 159 Vt. 53, 56, 615 A.2d 141, 144 (1992) (quoting *American Trucking Ass'ns v. Conway*, 152 Vt. 363, 369, 566 A.2d 1323, 1327 (1989)). It is generally recognized that "[t]he doctrines of res judicata and collateral estoppel are applicable to administrative proceedings when an agency is acting in a judicial capacity." 1 C. Koch, Administrative Law and Practice § 6.63, at 312 (Supp. 1997); see *United States v. Utah Constr. & Mining Co.*, 384 U.S. 394, 422 (1966) ("When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose.").

 Employer has not argued, and we see no reason, why it would be inappropriate to apply this general rule in this particular situation. All of the criteria for applying issue preclusion appear to be met, and employer does not contend otherwise. See *Trepanier v. Getting*

*Organized, Inc.*, 155 Vt. 259, 265-66, 583 A.2d 583, 587-88 (1990) (stating criteria for applying issue preclusion, and noting that party opposing its application has burden to show existence of circumstances that make it appropriate for issue to be relitigated). The administrative proceedings provided employer a full and fair opportunity to raise its arguments concerning the Department's May 7, 1996 successor status determination. Employer did in fact raise those arguments, the Board considered and rejected the fact-based arguments on their merits, and employer failed to timely appeal the Board's decision rejecting the arguments. See Koch, *supra*, at 315 ("The preclusive effect of an administrative decision may be stronger where the party did not seek judicial review of the prior decision."). Given this history, we conclude that employer was precluded from relitigating the Department's May 7, 1996 successor status determination in proceedings following the Board's April 4, 1997 decision sustaining the initial increase in contribution rate that resulted from the determination.

 Although we reject employer's appeal, we acknowledge employer's legitimate concerns about the Department's failure to fully apprise a successor business of the impact of a successor designation. As employer points out, the Department's response that it would have to be "clairvoyant" to estimate the effect of a successor status determination on the future contribution rate of a successor employer places the burden of predicting the rate impact on the employer. It is unreasonable to expect a successor company — particularly when many are unrepresented sole proprietorships — to timely exercise an appeal right the importance of which can be understood only when one knows the impact of the successor status determination on the successor employer's contribution rate. Since the Department concedes this knowledge would require a capacity for prediction that is beyond even the Department's expertise, it is not surprising that an employer like plaintiff characterizes the process as unfair. Accordingly, we caution the Department that an employer who does not appeal a successor status determination which fails to apprise the employer of the nature and extent of the deprivation involved does not waive its right to challenge that determination at a later time when the extent of the deprivation is specified.

*Affirmed.*