Saleh W. IGAL, Petitioner,

v.

**BRIGHTSTAR INFORMATION TECHNOLOGY GROUP, INC. and BRBA, Inc., Respondents.**

No. 04–0931.

Supreme Court of Texas.

Argued Jan. 25, 2006.

Decided May 2, 2008.

Original Dissenting Opinion Dec. 7, 2007.

**23.** Tex.R. Civ. P. 329b(c).

Charles W. Sartain, Looper Reed & McGraw, Dallas, Wade Caven Crosnoe, Thompson Coe Cousins & Irons, L.L.P., Austin, TX, for Petitioner.

Anne Marie Finch, Godwin Pappas Langley Ronquillo, LLP, Houston, TX, for Respondent.

Amy Warr, Alexander Dubose Jones & Townsend, LLP, Rance L. Craft, Office of the Attorney General, Austin TX, for Amicus Curiae.

Justice WAINWRIGHT delivered the opinion of the Court as to Parts I, II, III, IVA, IVB2, and V, in which Justice GREEN, Justice JOHNSON, Justice WILLETT, and Justice McCOY * joined, and an opinion as to Part IVB1, in which Justice GREEN, Justice JOHNSON, and Justice WILLETT joined.

In 1989, the Legislature amended the Texas Payday Law to create an adminis-

* The Honorable Bob McCoy, Justice, Second District Court of Appeals, sitting by commis-

trative procedure for a claimant to file a wage claim with the Texas Workforce Commission (TWC). In this case, we consider for the first time whether TWC's final adjudication denying recovery of wages precludes the subsequent filing of a common law wage claim for the same wages in state court. We hold that when a claimant pursues a wage claim to a final adjudication before TWC, res judicata bars the claimant from later filing a lawsuit for the same damages in a Texas court of law.

## I. Factual and Procedural Background

In 1989, Saleh Igal began working for BRBA, Inc. In April 1998, Igal executed an employment agreement with BRBA. Prior to the execution of the employment agreement, Brightstar Information Technology Group, Inc. acquired BRBA and assumed BRBA's obligations under the agreement. Igal alleges that Brightstar then terminated his employment without cause on January 19, 2000, entitling him to post-termination salary. Eighteen months later, on July 17, 2001, Igal filed a wage claim with TWC, asserting a violation of his employment agreement and claiming unpaid wages, bonuses, and benefits from May 2000 to January 2001. A TWC hearing officer dismissed his claim in a preliminary wage determination order. On October 5, 2001, Igal requested a hearing on that determination. On November 27, 2001, December 27, 2001, and February 14, 2002, a TWC appeals tribunal conducted hearings on Igal's appeal, which included appearances by counsel and witness testimony for both sides. On February 19, 2002, TWC issued its decision, concluding that Igal's claim failed on the merits and that TWC lacked jurisdiction because Igal filed his claim more than 180 days after his wages became due for payment. TWC notified the parties that the decision would become final fourteen days after its issuance unless one of the parties filed a motion for rehearing or sought judicial review of its decision.

In lieu of filing a motion for rehearing with TWC or seeking judicial review of TWC's decision, Igal sued Brightstar and BRBA in a Texas district court for breach of contract and declaratory judgment. Brightstar and BRBA moved for summary judgment, arguing that TWC's final decision barred Igal's claims through res judicata, or alternatively, that Igal failed to exhaust his administrative remedies. The trial court granted the motion for summary judgment, holding that res judicata barred Igal's claims. The court of appeals affirmed the trial court, holding that TWC had jurisdiction over Igal's claims because the 180–day filing limitations period was not jurisdictional and that res judicata barred Igal's breach of contract claims. 140 S.W.3d 820. We affirm the court of appeals and hold that the filing limitations period of Section 61.051, while mandatory, is not jurisdictional and that res judicata attaches to TWC's final administrative decision.

## II. Payday Law

In 1915, the Legislature enacted the first Texas Payday Law, requiring certain types of employers to promptly and regularly pay employees the full amount of wages due.[1] At present, it requires pri-

---

sion of the Honorable Rick Perry, Governor of Texas, pursuant to section 22.005 of the Texas Government Code. Justice Hecht is recused.

1. Act of March 1, 1915, 34th Leg., R.S., ch. 25, 1915 Tex. Gen. Laws 43 (amended 1933, 1957, 1983, 1985, 1989, 1991). This act was codified into the Texas Labor Code in 1993 and subsequently amended. Act of May 12, 1993, 73d Leg., R.S., ch. 269, § 1, 1993 Tex. Gen. Laws 987, 1010) (amended 1995, 1997,

vate employers [2] of all types and sizes to pay wages owed to employees [3] in full, on time, and on regularly scheduled paydays. TEX. LAB.CODE § 61.011. Originally, employees pursued unpaid wage claims in court, if at all. In 1989, the Legislature authorized the Texas Employment Commission (now part of TWC) to receive and adjudicate complaints for failure to pay wages owed. Act of May 31, 1989, 71st Leg., R.S., ch. 1039, § 3.01, 1989 Tex. Gen. Laws 4172, 4213–16 (current version at TEX. LAB.CODE §§ 61.051–.067). This amendment gives employees the option of filing in court or with TWC to recover unpaid wages. TEX. LAB.CODE § 61.051(a) ("An employee who is not paid wages as prescribed by this chapter *may* file a wage claim with the commission.") (emphasis added). Although there are no statutory limitations on the amount a wage claimant may pursue at TWC, typically the claims are too small to justify a lawsuit.[4] According to TWC, it receives approximately 20,000 wage claims per year for initial decision, and about 18% of those claims are appealed to TWC's appeals tribunal yearly.

TWC's procedures are designed to resolve claims expeditiously and inexpensively, and it uses abbreviated mechanisms of an adversarial judicial process to adjudicate wage claims. For example, TWC's rules provide for issuance and enforcement of subpoenas for witnesses and documents, representation by counsel, and issuance of decisions of TWC's appeals tribunals in writing. *See* 40 TEX. ADMIN. CODE

§§ 815.18, 821.45(c). The Legislature has granted TWC broad authority to enforce its decisions. *See* TEX. LAB.CODE §§ 61.019 (making the failure to pay wages a felony), 61.020 (authorizing the attorney general to seek injunctive relief against repeat offenders), 61.081 (making a final TWC order an administrative lien on all of an employer's property), 61.091 (granting TWC the authority to levy the employer's bank account). Aggrieved parties may appeal the initial Commission preliminary wage determination order to a TWC appeals tribunal, and, after exhausting administrative remedies, appeal the Commission's final order to a court of competent jurisdiction. *Id.* § 61.062(a).

## III. Jurisdiction

 Res judicata does not apply when the initial tribunal lacks subject matter jurisdiction over the claim. *See Citizens Ins. Co. of Am. v. Daccach,* 217 S.W.3d 430, 452–53 (Tex.2007). Consequently, we must first address whether TWC had subject matter jurisdiction over Igal's claim.

Igal argues that TWC dismissed his claim because it had no jurisdiction pursuant to section 61.051 of the Texas Labor Code. He maintains that the court of appeals erred by expanding TWC's jurisdiction beyond the Legislature's intention, as expressed in Section 61.051. Igal argues that because TWC lacked subject matter jurisdiction, TWC's decision could not preclude his subsequent lawsuit.

---

2003, 2005) (current version at TEX. LAB.CODE §§ 61.001–.095).

**2.** By its terms, the Payday Law does not apply to the federal or Texas government, or political subdivisions of this state. TEX. LAB.CODE § 61.003.

**3.** Independent contractors are not protected by the Payday Law. TEX LAB.CODE § 61.001(3)(B).

**4.** A 2003 study of 119 claims found that the median wage claim was $420.00. Julien Ross, *A Fair Day's Pay: The Problem of Unpaid Workers in Central Texas,* 10 TEX. HISP. J.L. & POL'Y 117, 128 (2004). However, Igal's claim is for $285,234.57.

■ The Legislature establishes the jurisdiction of administrative agencies. Igal claims Subsection 61.051(c) limits TWC's jurisdiction. Subsection 61.051(c) of the Texas Labor Code states that "[a] wage claim must be filed not later than the 180th day after the date the wages claimed became due for payment." Igal performed his last services for BRBA on January 19, 2000. Two days later, Brightstar informed him that his work group had been discontinued, leaving him without a position at the company. Igal was paid through April 2000 but claimed that because Brightstar terminated him without cause, he was entitled to compensation under his contract through January 19, 2001. He filed his wage claim with TWC on July 17, 2001, seeking wages from May 2000 through January 19, 2001. In its decision, TWC stated:

> The Commissions' jurisdiction extends back only 180 days from the filing of the wage claim. Any pay owed to the claimant would have been due well before the beginning of the Commission's jurisdiction in this case. Therefore, the wage claim was not timely filed and is dismissed.

Before this Court, Igal argues that he took TWC at its word that it did not have jurisdiction and therefore filed his wage claim in district court. He contends that the court of appeals expanded TWC's jurisdiction beyond the 180 days the Legislature intended.

In support of his argument that the 180–day filing limitations period is a jurisdictional threshold, Igal cites *Texas Employment Commission v. Ortiz*, 574 S.W.2d 213, 215 (Tex.Civ.App.-Corpus Christi 1978, no writ). In *Ortiz*, the court of appeals held that the twelve-day limit for the internal appeals to the administrative appeals tribunal of the Commission was jurisdictional. *Id.* However, the court in *Ortiz* did not interpret the statute at issue here.

■ This Court has not directly addressed whether the filing limitations period in Subsection 61.051(c) is a jurisdictional threshold. In *Mingus v. Wadley*, we held that a party suing on a statutory cause of action must comply with all administrative prerequisites, as a matter of jurisdiction. 115 Tex. 551, 285 S.W. 1084, 1087 (1926), *overruled in part by Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71 (Tex. 2000). "The general rule is that where the cause of action and remedy for its enforcement are derived not from the common law but from the statute, the statutory provisions are mandatory and exclusive, and must be complied with in all respects or the action is not maintainable." *Mingus*, 285 S.W. at 1087. In *Dubai Petroleum Co.*, we overruled *Mingus* "to the extent that it characterized the plaintiff's failure to establish a statutory prerequisite as jurisdictional." 12 S.W.3d at 76. Igal urges the Court to apply *Mingus*, not *Dubai*, and hold that a plaintiff's failure to meet a statutory prerequisite for a wage claim is jurisdictional. However, in *Dubai*, we discussed the evolution of this area of the law, noting that "[a]lthough *Mingus* represented the dominant approach when it was decided, 'the modern direction of policy is to reduce the vulnerability of final judgments to attack on the ground that the tribunal lacked subject matter jurisdiction.'" *Id.* (quoting Restatement (Second) of Judgments § 11 cmt. e (1982)).[5]

---

5. Although in the past we have described a statutory time limitation in the Commission on Human Rights Act as "mandatory and jurisdictional," those cases predate *Dubai* and dealt with a different statutory scheme than presented here. *See Johnson & Johnson Med., Inc. v. Sanchez*, 924 S.W.2d 925, 929 (Tex.1996); *Specialty Retailers v. DeMoran-*

Even before *Dubai*, we explained that "just because a statutory requirement is mandatory does not mean that compliance with it is jurisdictional." *Albertson's, Inc. v. Sinclair*, 984 S.W.2d 958, 961 (Tex.1999). Later, in *University of Texas Southwestern Medical Center v. Loutzenhiser*, we elaborated on this distinction, looking to legislative intent to determine whether a requirement is jurisdictional or merely mandatory:

> The failure of a non-jurisdictional requirement mandated by statute may result in the loss of a claim, but that failure must be timely asserted and compliance can be waived. The failure of a jurisdictional requirement deprives the court of the power to act (other than to determine that it has no jurisdiction), and ever to have acted, as a matter of law. Since the Legislature is bound to know the consequences of making a requirement jurisdictional, one must ask, in trying to determine legislative intent, whether the Legislature intended those consequences.

140 S.W.3d 351, 359 (Tex.2004), *superseded by statute*, Tex. Gov't Code § 311.034. Although the Legislature subsequently provided that the notice requirement at issue in *Loutzenhiser* was jurisdictional,[6] the Court's reasoning remains valid. Whether a filing requirement is jurisdictional is a question of statutory interpretation. Hence, we review the words of the statute.

Section 61.051, entitled "Filing Wage Claim," provides the conditions under which a claimant is eligible for relief. Neither the language of the provision nor the statutory scheme indicates Section 61.051 was intended to address TWC's jurisdiction. *See Thomas v. Long*, 207 S.W.3d 334, 340 (Tex.2006) (analyzing both express language and the statutory scheme to determine jurisdiction). It establishes a procedural bar similar to a statute of limitations and does not prescribe the boundaries of jurisdiction.[7] The Legislature's bill analysis supports this reading of Section 61.051. It explains that the provision "[e]stablishes a *process* by which an employee may file a wage claim with the commission, which can investigate the claim and, if necessary and appropriate, hold an administrative hearing and issue administrative penalties" and "[s]tructures the *process* and sets specific time lines for the involved parties to act." House Comm. on Gov't Org., Bill Analysis, Tex. H.B. 863, at 11, 71st Leg., R.S. (1989) (emphasis added). Section 61.051 outlines the filing process for a Payday Law claim and does not speak to TWC's jurisdiction.

The United States Supreme Court has also held that filing limitations periods for administrative complaints are not jurisdictional. In *Zipes v. Trans World Airlines, Inc.*, the Court held that the filing limitations period of an EEOC discrimination claim operated like a statute of limitations

---

*ville*, 933 S.W.2d 490, 492 (Tex.1996); *Schroeder v. Tex. Iron Works*, 813 S.W.2d 483, 486 (Tex.1991).

6. The Legislature amended Section 311.034 in 2005, after the filing of this case, to provide that "[s]tatutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a government entity." The superseding statute addresses waivers of sovereign immunity in suits against government entities, which is not at issue here.

7. Subsection (c) creates the 180–day filing limitation period. Tex. Lab.Code § 61.051(c). The remaining subsections deal with other procedural, not jurisdictional issues: Subsection (b) states that "[a] wage claim must be in writing on a form prescribed by the commission and must be verified by the employee," and Subsection (d) allows the employee to file his claim in person or by mail.

rather than as a jurisdictional prerequisite. 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). Title VII of the Civil Rights Act of 1964 requires that anyone wishing to challenge an employment practice must first file with the Equal Employment Opportunity Commission (EEOC), within a specified period of time. 42 U.S.C. § 2000e–5(e). The Supreme Court held that filing a timely charge of discrimination with the EEOC is not a jurisdictional prerequisite, but rather a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling. *Zipes,* 455 U.S. at 393, 102 S.Ct. 1127. The relevant statute in that case "contains no reference to the timely-filing requirement. The provision specifying the time for filing charges with the EEOC appears as an entirely separate provision, and it does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts." *Id.* at 393–94, 102 S.Ct. 1127. The Court explained that the provision granting federal district courts jurisdiction over Title VII claims does not limit jurisdiction to those cases in which there has been a timely EEOC filing. *Id.* at 393, 102 S.Ct. 1127. Thus, the United States Supreme Court held that even with their limited subject matter jurisdiction, federal courts maintain jurisdiction over Title VII claims, even in the event of an untimely EEOC filing. *Id.* Similarly, the 180–day filing limitations period in this case is a filing requirement.

Following *Zipes,* the United States Supreme Court continued to distinguish between statements of jurisdiction and mere filing requirements. In *Kontrick v. Ryan,* the Supreme Court observed that there is "a critical difference between a rule governing subject matter jurisdiction and an inflexible claim-processing rule." 540 U.S. 443, 456, 124 S.Ct. 906, 157 L.Ed.2d 867 (2004). In *Arbaugh v. Y & H Corp.,* the Supreme Court held that the numerosity requirement of fifteen or more employees in a Title VII action was not jurisdictional, but rather an element of the cause of action that could not be asserted defensively after the verdict. 546 U.S. 500, 516, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006).

The dissent argues that because the order of TWC's wage claim appeals tribunal used the term "dismissed," TWC held that it did not have jurisdiction over Igal's claim. Section 61.052 authorizes a TWC hearings officer to make one of two determinations when making a preliminary wage determination: dismiss the claim or order payment of wages. Tex. Lab.Code § 61.052(a) ("[T]he commission shall analyze each wage claim filed under Section 61.051 and, if the claim alleges facts actionable under this chapter, shall investigate the claim and issue a preliminary wage determination order: (1) dismissing the wage claim; or (2) ordering payment of wages determined to be due and unpaid."). Under the statute, TWC dismisses claims that are unsuccessful, whether based on jurisdiction or the merits. There is no basis in the statutory language for the dissent's conclusion that TWC's "dismissal" of Igal's claim necessarily signals only a non-merits ruling.

The order of TWC's hearings officer "becomes final 14 days after the date the order is mailed," unless it is timely appealed to the TWC appeals tribunal. *Id.* § 61.0614. Igal appealed to the appeals tribunal. The TWC wage claim appeals tribunal may modify, affirm, or rescind the preliminary wage determination order. *Id.* § 61.059. The appeals tribunal's dismissal of Igal's wage claim became final when Igal failed to file an appeal or motion for rehearing. *Id.* § 61.0614. TWC's order states that its dismissal of the claim was on two grounds: Igal's claim failed on the facts and the law, and Igal's complaint was not timely filed. Although a dismissal in

the courts often means the court held that it did not have subject matter jurisdiction over the dispute, TWC's procedures are not governed by the procedures for courts of law. It has its own procedures, and TWC is not bound in its administrative processes to use judicial terminology.

We interpret the words of the Legislature to have created the 180–day filing limitations period as a mandatory condition to pursuing the administrative cause of action and not as a bar to TWC's exercise of jurisdiction. TWC's use of the word "dismissed" in its order does not alter its jurisdiction. TWC had jurisdiction over Igal's claim. We turn to consider whether res judicata should attach to its final decision.

## IV. Res Judicata

### A. Preclusive Effect of TWC Orders

Igal maintains that res judicata cannot apply to his suit in a court of law because the Legislature intended Section 61 to provide an alternate, and not an exclusive, remedy. He also argues that because he is not required to appeal void judgments issued by an agency without jurisdiction, his unsuccessful prosecution of an administrative claim should not bar him from bringing a common law claim for the same transaction in state court. Brightstar responds that the court of appeals correctly applied res judicata because TWC had jurisdiction over the claim and rendered a final decision on the merits.

 Certainly in courts of law, a claimant generally cannot pursue one remedy to an unfavorable conclusion and then pursue the same remedy in another proceeding before the same or a different tribunal. Res judicata bars the relitigation of claims that have been finally adjudicated or that could have been litigated in the prior action. *See Barr v. Resolution Trust*

*Corp.,* 837 S.W.2d 627, 628 (Tex.1992). For res judicata to apply, the following elements must be present: (1) a prior final judgment on the merits by a court of competent jurisdiction; (2) the same parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action. *Daccach,* 217 S.W.3d at 449. Thus, a party may not pursue a claim determined by the final judgment of a court of competent jurisdiction in a prior suit as a ground of recovery in a later suit against the same parties. *Tex. Water Rights Comm'n v. Crow Iron Works,* 582 S.W.2d 768, 771–72 (Tex.1979). In short, res judicata precludes parties from relitigating claims that have been finally adjudicated by a competent tribunal. *See Barr,* 837 S.W.2d at 628.

We have not previously decided if res judicata applies to a final TWC decision. We have, however, held that to further the public policy discouraging prolonged and piecemeal litigation, the administrative orders of certain administrative agencies bar the same claims being relitigated in the court system. *Westheimer ISD v. Brockette,* 567 S.W.2d 780, 787, 789 (Tex.1978) (applying the doctrine of res judicata to a ruling of the Texas Commissioner of Education); *see also Coalition of Cities for Affordable Util. Rates v. Pub. Util. Comm'n,* 798 S.W.2d 560, 563, 565 (Tex. 1990) (applying res judicata to a Public Utilities Commission ruling). Similarly, the United States Supreme Court has held that when an administrative agency is acting in a judicial capacity, res judicata bars subsequent litigation following the agency's decision. *United States v. Utah Const. & Mining Co.,* 384 U.S. 394, 422, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966), *superseded by statute,* Contract Disputes Act of 1978, 41 U.S.C. §§ 601–613. "When an administrative agency is acting in a judicial capacity and resolve[s] disputed issues of

fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply res judicata to enforce repose." *Id.* The Supreme Court later reaffirmed the "long favored application of the common-law doctrines of collateral estoppel (as to issues) and res judicata (as to claims) to those determinations of administrative bodies that have attained finality." *Astoria Fed. Sav. & Loan Ass'n v. Solimino,* 501 U.S. 104, 107, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991). Many states have adopted the Supreme Court's three-pronged approach.[8]

█ In addition to the federal courts and courts of other states, Texas courts of appeals have cited *Utah Construction & Mining's* three-part test in holding that res judicata bars relitigation of claims previously finally determined by an administrative agency. *See, e.g., Tricon Tool & Supply, Inc. v. Thumann,* 226 S.W.3d 494, 511 (Tex.App.-Houston [1st Dist.] 2006, pet. denied); *Ex parte Serna,* 957 S.W.2d 598, 601 (Tex.App.-Fort Worth 1997, no

pet.). The Court of Criminal Appeals has also used this approach in assessing the effect of administrative decisions on future court proceedings. *See State v. Aguilar,* 947 S.W.2d 257, 259 (Tex.Crim.App.1997) (citing *Ex parte Tarver,* 725 S.W.2d 195, 199 (Tex.Crim.App.1986)). In deciding wage claims under Section 61, TWC acts in a judicial capacity. The parties had an adequate opportunity to litigate their claims through an adversarial process in which TWC finally decided disputed issues of fact. Res judicata, therefore, will generally apply to final TWC orders.

█ The fact that the Payday Law provides an alternative remedial scheme to the common law does not prevent res judicata from applying to TWC orders. Both courts and administrative agencies may provide remedies for injuries actionable under the common law. The Legislature intended the Payday Law to provide employees with a vehicle for relief when a traditional lawsuit proved too arduous. *See Holmans v. Transource Polymers, Inc.,* 914 S.W.2d 189, 192 (Tex.App.-Fort

---

**8.** The highest courts in many states have relied on the United States Supreme Court decision in *Utah Construction & Mining* to evaluate the preclusive effects of administrative agency decisions. *See, e.g., Luedtke v. Nabors Alaska Drilling,* 768 P.2d 1123, 1131 n. 5 (Alaska 1989); *Brosterhous v. State Bar,* 12 Cal.4th 315, 48 Cal.Rptr.2d 87, 906 P.2d 1242, 1254 (1995); *State v. Dukelow,* No. 24233, 2003 WL 21481142, at * 1, 102 Hawai'i 26, 72 P.3d 498 (Haw. Jun.27, 2003); *Bennett v. MC No. 619, Inc.,* 586 N.W.2d 512, 517–18 (Iowa 1998); *Gulf States Utils. Co. v. La. Pub. Serv. Comm'n,* 633 So.2d 1258, 1267 (La.1994) (Dennis, J., concurring); *Stowe v. Bologna,* 415 Mass. 20, 610 N.E.2d 961, 963 (1993); *Nasi v. State Dep't of Highways,* 231 Mont. 395, 753 P.2d 327, 329 (1988); *Scott v. Mattingly,* 241 Neb. 276, 488 N.W.2d 349, 352 (1992); City of *Hackensack v. Winner,* 82 N.J. 1, 410 A.2d 1146, 1161 (1980); *Ryan v. N.Y. Tel. Co.,* 62 N.Y.2d 494, 499, 478 N.Y.S.2d 823, 467 N.E.2d 487 (1984); *Cridland v. N.D. Workers Comp. Bureau,* 571 N.W.2d 351, 355 (N.D.1997); *Superior's Brand Meats, Inc. v. Lindley,* 62 Ohio St.2d 133, 403 N.E.2d 996, 999 (1980); *Lee v. R.I. Council 94,* 796 A.2d 1080, 1089 (R.I.2002); *Carman v. S.C. Alcoholic Beverage Control Comm'n,* 317 S.C. 1, 451 S.E.2d 383, 386 (1994); *Schmidt v. Zellmer,* 298 N.W.2d 178, 180 (S.D.1980); *Salt Lake Citizens Congress v. Mountain States Tel. & Tel. Co.,* 846 P.2d 1245, 1251 n. 4 (Utah 1992); *Sheehan v. Dep't of Empl. & Training,* 169 Vt. 304, 733 A.2d 88, 91 (1989); *In re Personal Restraint of Gronquist,* 138 Wash.2d 388, 978 P.2d 1083, 1090 (1999); *Liller v. W. Va. Human Rights Comm'n,* 180 W.Va. 433, 376 S.E.2d 639, 646 (1988); *Lindas v. Cady,* 183 Wis.2d 547, 515 N.W.2d 458, 466 (1994); *Slavens v. Bd. of County Comm'rs,* 854 P.2d 683, 685 (Wyo. 1993). The Minnesota Supreme Court has also applied res judicata to administrative agency decisions, independent of Utah Construction & Mining. *See McKee v. County of Ramsey,* 310 Minn. 192, 245 N.W.2d 460 (1976).

Worth 1995, writ denied). Typically, a statutory remedy is cumulative of the common law remedy, unless the statute denies the right to the common law remedy. *Id.* We agree with the court of appeals in this case that "[t]he Payday Act is not an employee's sole and exclusive remedy for a claim based on past wages but is rather an alternative remedy that is cumulative of the common law." 140 S.W.3d at 823. Payday Law actions do not abrogate common law claims against employers for an alleged failure to pay compensation. Rather, TWC offers an alternate means to the same remedy.

Igal argues that under our holding in *Cash America International, Inc. v. Bennett*, res judicata does not preclude claimants from relitigating TWC claims in state court. 35 S.W.3d 12, 16 (Tex.2000). The holding in *Bennett* was based on the Texas Pawnshop Act's provision of alternate, concurrent remedies to certain common law claims. *Id.* at 14. We explained that "[t]he Legislature expressly left pledgors free to 'seek a remedy in court' if they are dissatisfied with the Commissioner's determination or if the Commissioner does not make a timely determination." *Id.* at 17 (citing Act of May 27, 1999, 76th Leg., R.S., ch. 1399, § 7, 1999 Tex. Gen. Laws 4724, 4726 (now codified at Tex. Fin.Code § 371.167(a))). Importantly, in that case, the Legislature had amended the relevant section of code to read "if the pledgor does not accept the commissioner's determination, the pledgor may seek a remedy in court." Tex. Fin.Code § 371.167(a). Although this amendment was not applicable to the case, the Court found it instructive in assessing the Legislature's intent. The Labor Code does not provide Igal with any such recourse.

Igal also argues that the court of appeals erred in its reliance on *Holmans* for the holding that res judicata applies to Igal's claim. 914 S.W.2d at 189. In that case, the claimant filed a common law debt action to recover unpaid sales commissions and expenses. *Id.* at 190. He then filed an administrative wage claim with the Texas Employment Commission (TEC).[9] *Id.* The preliminary wage determination indicated that the employer owed the claimant over $25,000 in unpaid commissions. *Id.* However, prior to the final determination, the claimant withdrew his administrative claim to pursue common law relief. *Id.* The employer moved to dismiss the common law claim for failure to exhaust administrative remedies. *Id.* The court of appeals reversed, holding that the claimant could pursue his common law claim because he withdrew his wage claim before the agency made a decision. *Id.* at 194. The court reasoned that

> [s]hould a claimant choose to file a claim under the [Payday Law], utilize its remedial scheme, and appeal the final administrative order, then the claimant is properly required to abide by the statute's provisions. We do not, however, construe the Payday Law as preempting a claimant, such as appellant, from choosing to pursue his claim as a common-law action in the courts of this state.

*Id.* at 193. Accordingly, once a claimant who has alternate proceedings at his disposal to obtain relief available under the Payday Law pursues an administrative claim to a final decision, he forgoes his common law claims. To pursue a common law remedy for the same wages as sought

---

**9.** The TEC dealt with Section 61 wage claims, like Igal's, until 1995. In 1995, the Legislature enacted House Bill 1863, merging twenty-eight workforce services, including TEC, into TWC. Act of May 26, 1995, 74th Leg., R.S., ch. 655, art. 11, 1995 Tex. Gen. Laws 3543, 3580 (current version at Tex. Lab.Code §§ 301.001–.171).

in his payday claim, a claimant must withdraw his administrative claim before the agency issues a final decision. *See id.; see also Tricon Tool & Supply, Inc.,* 226 S.W.3d at 511 (claimant barred by res judicata when he failed to withdraw his administrative claim before agency decision became final). Because Igal did not withdraw his administrative claim prior to TWC's final determination, res judicata will bar his claim if TWC's order is considered final for the purposes of res judicata.

## B. Preclusive Effect of TWC's Igal Order

### 1. Adjudication of Disputed Facts

TWC's written order plainly resolved disputed facts and determined that Igal's claim for unpaid wages was without merit. The dissent contends that because TWC argues in this Court that it dismissed the claim on procedural grounds, we cannot hold that the decision was anything more than a procedural dismissal for untimeliness. There are at least two answers to that argument. First, the dissent shortchanges TWC's argument. TWC asserts that it lacked subject matter jurisdiction over Igal's late-filed claim. We have already held to the contrary, and the dissent agrees that TWC is wrong on this point. Second, TWC adjudicated more than just the timeliness issue in its Payday Law decision. In the order of its appeal tribune, TWC made findings of fact:

> Although the claimant did not receive a document from either entity which states "your agreement is not being renewed", the claimant was notified in writing that his group was being dissolved and he was no longer performing services for the named businesses. The Commission considers this sufficient notice that the agreement was not being renewed. The claimant was paid through the end of the last contract period, April, 1999–April, 2000.

> Since the claimant remained on the payroll with the named businesses through the end of the contract period, he is considered "employed" by the named businesses through the end of the contract period. The agreement expired. The claimant's employment ended when the contract ended. He was not "terminated without cause" as provided in the agreement and, therefore, is not entitled to the various payments which may have become due under the agreement if his employment had been terminated without cause.

> Consequently, there is no extension of compensation owed to the claimant beyond the expiration of the agreement in April 2000. The Commissions' jurisdiction extends back only 180 days from the filing of the wage claim. Any pay owed to the claimant would have been due well before the beginning of the Commission's jurisdiction in this case. Therefore, the wage claim was not timely filed and is dismissed.

TWC decided the key questions of fact in dispute in Igal's payday claim: when Igal's employment contract expired, that he had sufficient notice that the contract was not being renewed, that he was not terminated without cause, and that he was not entitled to any additional compensation. The dissent correctly concludes that "the Commission had to decide whether he was terminated for cause or nonrenewal" as a prerequisite to deciding whether Igal's claim was timely. 250 S.W.3d 78, 94. Yet the dissent maintains that these necessary findings of fact did not go to the merits of Igal's claim. *Id.* Regardless of their purpose, however, these findings were determinations made by a competent tribunal vested with judicial authority to make those decisions after an adequate opportu-

nity to air the issue. As the Court decides that the filing limitations period was not a jurisdictional prerequisite, TWC's order that Igal was not entitled to additional compensation could stand on its own feet as a final judgment. The suggestion that findings of fact that were necessary to a final judgment should not be accorded res judicata effect would be quite a departure from established jurisprudence. Claim preclusion is accorded to all claims that have been finally adjudicated or that could have been finally adjudicated in the prior litigation that arise from the same transaction. *Barr*, 837 S.W.2d at 628.

Moreover, the dissent's assertion that TWC's merits determination was "an advisory opinion" misconstrues the term, as even the dissent concedes that it was necessary for TWC to answer the merits question as a condition to concluding the claim was untimely.

### 2. Limitations Ruling

 Even if we interpreted TWC's decision as merely a dismissal for failure to meet the 180–day filing limitations period, we reach the same conclusion. The filing limitations period acts as a statute of limitation for Payday Law claims. A court's dismissal of a claim because of a failure to file within the statute of limitations is accorded preclusive effect. *See Fite v. King*, 718 S.W.2d 345, 347 (Tex. App.-Dallas 1986, writ ref'd n.r.e.); *see also Besing v. Vanden Eykel*, 878 S.W.2d 182, 185 (Tex.App.-Dallas 1994, writ denied) (stating that granting summary judgment on limitations operates as res judicata to a subsequent writ between the same parties on the same cause of action). The Fifth Circuit has enunciated unequivocally that res judicata "shall be given to a judgment dismissing a cause of action on limitations grounds." *Steve D. Thompson Trucking, Inc. v. Dorsey Trailers, Inc.*, 870 F.2d 1044, 1046 (5th Cir.1989) (citing *Nilsen v. City of Moss Point*, 674 F.2d 379, 382 (5th Cir.1982), *aff'd on rehearing*, 701 F.2d 556 (5th Cir.1983) (en banc)). Many other federal courts of appeals have also recognized that a final judgment on statute of limitations grounds precludes further litigation of the same dispute. *See, e.g., Murphy v. Klein Tools, Inc.*, 935 F.2d 1127, 1128–29 (10th Cir.1991); *Kale v. Combined Ins. Co. of Am.*, 924 F.2d 1161, 1163, 1165 (1st Cir.1991); *Shoup v. Bell & Howell, Co.*, 872 F.2d 1178, 1180 (4th Cir. 1989); *Rose v. Town of Harwich*, 778 F.2d 77, 80 (1st Cir.1985) (applying Massachusetts law and acknowledging a "clear trend toward giving claim-preclusive effect to dismissals based on statutes of limitations"); *PRC Harris, Inc. v. Boeing Co.*, 700 F.2d 894, 896 (2d Cir.1983). Failure to timely file an administrative wage claim, as mandated by the Legislature, bars the claim on limitations grounds. TWC's dismissal of Igal's claims under Section 61.052(a) is a denial of the claim to which res judicata attaches when, as here, the claim is pursued to final judgment.

The dissent relies on Section 49 of the Restatement (First) of Judgments and the Restatement of Conflict of Laws for the proposition that a claimant whose action is precluded by limitations in one state court may still be able to pursue the same action in a different state with a longer limitations period. 250 S.W.3d at 94.[10] That

---

10. In section 19 of the subsequent Restatement (Second) of Judgments, the treatise acknowledges that increasingly judgments not passing directly on the merits of a claim are accorded preclusive effect, "especially if the plaintiff has failed to avail himself of opportunities to pursue his remedies in the first proceeding." In this case, after TWC issued its final adjudication, Igal failed to pursue his

analogy, the dissent argues, supports letting a Payday claimant who litigates his claim in the Texas Commission to a final decision later file the same claim in a Texas court of law. *Id.* This argument fails for several reasons.

First, Igal does not cite Section 49 or make the argument the dissent makes. Second, this Court has not adopted Section 49 of the Restatement. Third, Section 49 does not support the proposition that a Payday claimant can pursue his claim twice in this case. Comment (a) to Section 49 addresses the potential to file a claim in two different states with different statutes of limitations:

> [I]f the plaintiff brings an action to enforce a claim in one State and the defendant sets up the defense that the action is barred by the Statute of Limitations in that State, the plaintiff is precluded from thereafter maintaining an action to enforce the claim in that State. He is not, however, precluded from maintaining an action to enforce the claim in *another* State if it is not barred by the Statute of Limitations in that State.

RESTATEMENT (FIRST) OF JUDGMENTS § 49 cmt. a (1942) (emphasis added). Igal's claim is being pursued in one state, not in two states with separate legislatures that have mandated different public policies on limitations. *See Steve D. Thompson Trucking, Inc. v. Dorsey Trailers, Inc.,* 880 F.2d 818, 819 (5th Cir.1989) (denial of rehearing) (concluding that Section 49 applies to "duplicative actions in state courts in different states"). As this Court has explained, the Texas Legislature's creation of the Payday administrative scheme

and the attendant filing limitations period logically effectuates its efficiency goals, which are not inconsistent with the existence of an alternate common law contract claim. The Legislature set up a more rapid administrative route that a claimant may select, or a claimant may pursue the judicial route; both have benefits and detriments depending on the timing of the filing, the size of the claim, the cost of pursuing recovery, and other factors. In this case, we are not faced with contrary policies in separate jurisdictions which Section 49 presumes for its limitations argument. The Fifth Circuit Court of Appeals case on which the dissent relies for its Section 49 argument is distinguishable as it presents competing limitations policies in different states that are not at issue here. *See Henson v. Columbus Bank & Trust Co.,* 651 F.2d 320, 325 (5th Cir.1981) (a plaintiff's failure to defeat a statute of limitations defense in one state does not necessarily preclude the action in another jurisdiction). The Fifth Circuit later distinguished Section 49 and squarely held, in cases like this one, that a dismissal on limitations grounds operates to bar subsequent litigation of the same dispute in the same jurisdiction. *See Ellis v. Amex Life Ins. Co.,* 211 F.3d 935, 937 (5th Cir.2000) (dismissal of a suit on limitations grounds bars second suit under principles of res judicata); *Thompson Trucking,* 880 F.2d at 819 (distinguishing *Henson); see also Mathis v. Laird,* 457 F.2d 926, 927 (5th Cir.1972) (holding that a ruling based on a statute of limitations was a decision on the merits for res judicata purposes).[11]

---

statutory right to appeal TWC's decision to a district court.

11. The dissent also cites Miller, Wright, and Cooper's Federal Practice and Procedure for the proposition that a second forum may allow a suit barred by limitation in the first

forum to proceed. 18A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4441 (2d ed.2002). Section 4441 does not consider the preclusive effect of a state administrative agency order on a claim filed in a court in the same state.

Fourth, claimants are entitled to a fair and reasonable procedure to recover unpaid wages. We do not conclude, however, that because the Legislature created an administrative route to recovery as an alternative to a lawsuit, that claimants necessarily will have two bites at the apple. They are entitled to a fair bite, but not two bites. A common law breach of contract claim for damages has long existed. The 1989 amendments to the Labor Code that created an administrative route for employees to obtain unpaid wages advised employees that they "may," not must, file a wage claim with TWC. Employees were then given a choice between an administrative process designed to adjudicate quickly relatively small claims or to have their day in court and the longer and more involved process of the judicial system. *See Tricon Tool & Supply, Inc.*, 226 S.W.3d at 511. The Legislature could have created two consecutive procedures (an administrative proceeding followed by a new judicial proceeding for the dissatisfied party) for adjudicating these claims, but there is no indication that it did. In Texas parlance, the claimant selects which horse to ride. Once the horse crosses the finish line, a claimant cannot switch horses and run the same race again, hoping for a different outcome.

Fifth, the dissent's position would also make TWC determinations based on limitations entirely duplicative, as any party aggrieved by a final administrative decision on limitations would get another chance in a lawsuit over the same claim in a court of law. *See* TEX. LAB.CODE § 61.062. Moreover, this position could pit one court's ruling against another. An unsuccessful party who timely appealed the final TWC limitations ruling to a trial court of competent jurisdiction could also obtain review in Texas appellate courts thereafter. If the party ultimately lost the judicial appeal of TWC's administrative decision, including through judicial appeals and petition to this Court, the dissent would allow the party to file a new common law claim in a court that could reach a different result. There is simply no indication that the Legislature intended Payday Law claims to receive judicial review in two separate court proceedings. We decline to impose such substantial inefficiency on the Legislature's Payday scheme.

Finally, we do not equate the optional filing of an administrative claim as equivalent to filing a common law claim in a separate jurisdiction's court of law, such that Section 49's two-state approach might apply. Unlike with common law claims, the Legislature can prescribe with relatively few limitations the parameters, damages, and procedures for pursuing an administrative right it creates. *See Tex. Natural Res. Conservation Comm'n v. Lakeshore Util. Co.*, 164 S.W.3d 368, 377 (Tex.2005) ("We begin with the well-established principle that as an administrative agency, the Commission may exercise only those powers that the Legislature confers upon it in clear and express language, and cannot erect and exercise what really amounts to a new or additional power for the purpose of administrative expediency.") (citing *Pub. Util. Comm'n v. City Pub. Serv. Bd. of San Antonio*, 53 S.W.3d 310, 316 (Tex.2001)). The Legislature created an alternate administrative remedy and included a right to appeal the final administrative determination to a court of law. Igal availed himself of the administrative avenue and declined to exercise his right to appeal.

TWC was acting in a judicial capacity when it decided that Igal's failure to timely file defeated his claims. When TWC's decision became final, Igal was bound by that decision. Res judicata, therefore, barred Igal's suit in district court.

## V. Conclusion

Igal had the option of seeking relief for alleged unpaid wages in an administrative proceeding under the Payday Day Law or pursuing a common law debt action in state court. He chose the former. Only after TWC entered a final judgment on the merits, which Igal elected not to appeal, did Igal seek redress in the courts. We hold that the doctrine of res judicata bars Igal from pursuing relief in a court of law after obtaining a final decision in TWC for the same transaction. We therefore affirm the judgment of the court of appeals.

Justice BRISTER filed a dissenting opinion, in which Chief Justice JEFFERSON, Justice O'NEILL, and Justice MEDINA joined.

Justice BRISTER filed a dissenting opinion, in which Chief Justice JEFFERSON, Justice O'NEILL, and Justice MEDINA joined.

The Texas Legislature passed the Payday Law to give unpaid workers a quick alternative to lengthy civil litigation. But today the Court holds they lose everything if they pursue that alternative a little too late, even though years remain to file suit in court. This is not about biting apples twice; this is about a man's wages, a claim that like many others can be filed a second time if the first disposition was not on the merits. By holding Payday claims dismissed for tardiness cannot be refiled in court, the Court converts a law giving extra options to workers into a trap where they may forfeit all their rights. Because I agree with the state agency entrusted with these claims that this could not possibly be what the Legislature intended, I respectfully dissent.

I agree the Payday Law's 180–day filing requirement is mandatory but not jurisdictional. But I disagree that an order dismissing a Payday claim as untimely precludes a subsequent suit. Res judicata attaches only to a judgment on the merits.[1] There are at least five reasons why the Texas Workforce Commission's order here is not one.

First, the Commission itself says so. In its amicus brief supporting Igal's right to file suit in court, the Commission says "res judicata does not apply ... because TWC's order was not a judgment on the merits but a procedural dismissal for untimeliness." How can the Court hold the Commission intended a merits dismissal when the Commission itself stipulates that it did not? There is no reason to doubt the Commission's word; the Commission "dismissed" Igal's claim, using a term employed throughout the Texas Rules of Civil Procedure,[2] and American law generally,[3]

---

1. *Citizens Ins. Co. of Am. v. Daccach,* 217 S.W.3d 430, 449 (Tex.2007); *Amstadt v. U.S. Brass Corp.,* 919 S.W.2d 644, 652 (Tex.1996).

2. *See, e.g.,* TEX.R. CIV. P. 39(b) (addressing whether suit should be "dismissed" for indispensable party); *id.* 42(e) (requiring court approval for "settlement, dismissal, or compromise" of class action); *id.* 89 (allowing court to which venue is transferred to "dismiss" case if filing fee not paid); *id.* 143 (allowing claim to be "dismissed" if security for costs not paid); *id.* 151 (allowing suit to be "dismissed" if deceased plaintiff's representatives do not appear); *id.* 161 (allowing "dismissal" of unserved defendants); *id.* 162, 163 (allow-ing plaintiff to "dismiss" suit before close of evidence); *id.* 165a (allowing cases to be "dismissed" for want of prosecution); *id.* 215.2(b)(5) (allowing order "dismissing" suit as discovery sanction); *id.* 330(d) (allowing court to "dismiss" case if called for trial twice but not tried); *id.* 736(10) (requiring home-loan foreclosure action to be "dismissed" if owner files action contesting foreclosure).

3. *See* BLACK'S LAW DICTIONARY 502 (8th ed.2004) (defining "dismissal" as "Termination of an action or claim without further hearing, esp. before the trial of the issues involved").

for dispositions *without* a hearing on the merits. The Commission may have only two options for *preliminary* determinations (to dismiss or to order payment),[4] but after a hearing it can issue any written order it likes.[5]

Second, the order itself shows that Igal's contract rights were considered only for the purpose of deciding whether his claim was untimely. Igal's contract apparently guaranteed him extended payments if terminated without cause, but nothing if terminated by notice of nonrenewal. Because the extended payments would have been due within 180 days of Igal's Payday filing, the Commission had to decide whether he was terminated for cause or nonrenewal— not as a finding on the merits but simply to decide whether his claim was timely filed.

Third, to presume the Commission made a ruling on the merits, we must presume it made a clear error. While an untimely claim did not deprive the Commission of jurisdiction, it did prevent the Commission from reaching the merits if anyone complained (which Brightstar did). There is no good reason to encourage administrative agencies to address the merits of barred claims, especially when those claims are not yet barred in court. We should not presume the Commission committed an error by reaching the merits when it could not.

Fourth, Brightstar insisted throughout the Commission proceedings that Igal's claim was untimely. Brightstar could have waived this complaint (as it was not jurisdictional), and agreed to have the Commission decide the case on the merits. But it did not—it insisted Igal's claim should be dismissed because he filed late. Having obtained success on that ground, Brightstar should not be allowed to change its position when the claim was refiled in court.

Fifth, judgments based on limitations are usually considered rulings on the merits because a late claim can never be refiled any earlier (barring time travel[6]). But an important exception applies here because there are two different limitations periods. As the First Restatement of Judgments stated in a comment:

> Thus, if the plaintiff brings an action to enforce a claim in one State and the defendant sets up the defense that the action is barred by the Statute of Limitations in that State, the plaintiff is precluded from thereafter maintaining an action to enforce the claim in that State. *He is not, however, precluded* from maintaining an action to enforce the claim in another State if it is not barred by the Statute of Limitations in that State.[7]

The Second Restatement of Conflict of Laws now makes the same point:

> Thus, the plaintiff's suit may be dismissed in state X on the ground that it

---

**4.** *See* Act of May 12, 1993, 73d Leg., R.S., ch. 269, § 1, 1993 Tex. Gen. Laws 1014 (amended 2005) (current version at Tex. Lab.Code § 61.052).

**5.** *See* Act of May 12, 1993, 73d Leg., R.S., ch. 269, § 1, 1993 Tex. Gen. Laws 1015 (amended 2005) ("After a hearing, the commission shall enter a written order for the payment of wages that the commission determines to be due or for the payment of any penalty the commission assesses.").

**6.** Stephen W. Hawking, *Chronology Protection Conjecture*, 46 Physical Rev. D. 603 (1992) (arguing in his "chronology protection conjecture" that the laws of physics are such as to prevent time travel on all but sub-microscopic scales).

**7.** Restatement (First) of Judgments § 49 cmt. a (emphasis added)).

is barred by the X statute of limitations. This judgment will preclude the plaintiff from thereafter maintaining an action to enforce the claim in state X. This judgment, however, binds the parties only with respect to the issue that was decided. It will preclude the plaintiff from maintaining an action to enforce the claim in another state only if the courts of the other state would apply the X statute of limitations. . . . [8]

The First, Second, Fifth, Seventh, and Tenth federal circuit courts all agree that while dismissals based on limitations are usually preclusive, they are not preclusive when a case is filed in two different systems that apply two different limitations periods.[9] In such cases, as Wright and Miller state: "[i]f the second forum would decide independently to apply a longer period of limitations ... the traditional rule has been that it is free to proceed with the second action." [10] While dismissal of an untimely claim may be preclusive if based on the substantive law governing the claim (Texas contract law's four years), it is not preclusive if based on a shorter period designed as a procedural protection for the first forum (the Commission's 180 days):

> Dismissal based on the limitations period established by the law that governs the claim is a judgment on the merits that precludes application of a different limitations period by another court. Dismissal based on application of the

forum's own shorter period for purposes of protecting the forum *is not a judgment on the merits and does not preclude an action on the same claim in a court that would apply a longer limitations period.*[11]

This Court has never adopted these well-settled and long-standing principles, but we certainly have not rejected them either. In the past, Texas law has not provided two limitations periods for a single claim; now that it sometimes does when there is an administrative alternative to the courts, we should explain why we reject the traditional rules followed by everyone else.

Igal can hardly be faulted for not appealing the Commission's decision. As his claim was untimely, an appeal would have been futile. Even if he could have convinced an appellate court to reverse the part of the Commission's decision discussing the merits (which I doubt since it was necessary to decide timeliness), he would still have lost due to the late filing. The Payday process is supposed to be quick and cheap; requiring an appeal for this late claim would have simply made it longer and more expensive.

I would not hold that every unsuccessful Payday claimant can start over with the same claim in court. Claimants should not be permitted to litigate the same issue twice.[12] But the only issue Igal has litigat-

8. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 110 cmt. b (1988).

9. *Reinke v. Boden,* 45 F.3d 166, 173 (7th Cir. 1995); *Henson v. Columbus Bank,* 651 F.2d 320, 325 (5th Cir.1981); *Jimenez v. Toledo,* 576 F.2d 402, 404 (1st Cir.1978); *Sack v. Low,* 478 F.2d 360, 363 (2d Cir.1973); *Titus v. Wells Fargo Bank & Union Trust,* 134 F.2d 223, 224 (5th Cir.1943); *Stokke v. S. Pac. Co.,* 169 F.2d 42, 43 (10th Cir.1948); *United States v. Lyman,* 125 F.2d 67, 70 (1st Cir.1942);

*Warner v. Buffalo Drydock Co.,* 67 F.2d 540, 541 (2d Cir.1933).

10. 18A CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE § 4441 (2d ed.2002).

11. *Id.* (emphasis added).

12. *Cf. Harris County v. Sykes,* 136 S.W.3d 635, 639 (Tex.2004) (holding sovereign immunity dismissal should be with prejudice "because a

ed so far is whether he filed his Payday claim within 180 days; he does not need to litigate that issue again here as it is irrelevant to whether he filed his breach of contract claim within four years.[13]

The Legislature has chosen to give Texans asserting Payday claims two different ways to proceed. That being the case, this Court has no business saying that if they try one too late, then they get none at all. The Commission properly dismissed Igal's Payday claim as late, but that does not preclude his common law claim which was filed on time. Because the Court holds otherwise, I respectfully dissent.

plaintiff should not be permitted to relitigate jurisdiction once that issue has been finally determined").

**13.** TEX. CIV. PRAC. & REM.CODE § 16.004(a)(3); *Via Net v. TIG Ins. Co.,* 211 S.W.3d 310, 312 (Tex.2006) (per curiam).