Opinion issued December 9, 2010


 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 

 


In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00169-CV

———————————

UL, INC., d/b/a URBAN LIVING AND GEORGE SILASKI, Appellants

V.

JOSE L.
PRUNEDA, Appellee



 



 

On Appeal from the 164th District
Court

Harris County, Texas



Trial Court Case No. 2007-29388

 



 

 

MEMORANDUM OPINION

          This appeal involves a suit brought by
real estate agent, Jose L. Pruneda, to recover commissions from appellants, UL,
Inc., d/b/a Urban Living and George Silaski arising from the sale of two pieces
of real property.  The trial court
rendered summary judgment for monetary damages and attorney’s fees in favor of Pruneda
against Urban Living and Silaski.  

          On appeal, Urban Living and Silaski present
six issues challenging the summary judgment. 
Among their challenges, appellants assert that the trial court lacked
subject-matter jurisdiction, contend that a number of affirmative defenses
barred Pruneda’s recovery of damages, claim that Pruneda did not carry his summary
judgment burden, and dispute the award of attorney’s fees.   

          We affirm in part, reverse in part,
and remand the case to the trial court.

Factual
& Procedural Background

          Jose
Pruneda worked as a real estate agent for UL, Inc., d/b/a Urban Living, a real
estate company.  In 2005, Pruneda
procured real estate contracts for two separate properties.  The first contract was for the sale of real
property located at 3201 Moxroy.  Pruneda
acted as the intermediary agent between the seller and the buyer.  

          Urban Living’s employee handbook
provided that commissions earned by its associates on property transactions
“will be split with 60% going to [Urban Living] and 40% going to the associate.”  The sales price for the Moxroy property was $1,106,786.    

          The registration agreement for the
Maxroy property identifies Pruneda as the agent and www.Urban, Inc. as the
broker for the sale.  Appellant, George
Silaski, is a licensed broker and an officer of www.Urban, Inc., which holds a
corporate broker’s license. 

          With regard to the second real estate contract,
Pruneda acted as the buyer’s agent for the purchase of property located at 1114
Bomar.  The sales price for the Bomar property
was $203,000.  Pruneda signed the sales
contract for the property as the buyer’s agent. 
The contract identified www.Urban, Inc. as the buyer’s broker.

          Later in 2005, Vinod Ramani, president
and CEO of Urban Living, sent two invoices, each signed by him, to the title
company that would be conducting the closings on the two properties.  The invoices indicate that Pruneda’s share of
the sales commission on the Moxroy property was $26,518 and that his share on
the Bomar property was $2,756.  

          On January 2, 2006, Pruneda terminated
his association with Urban Living.  The
closing on the Bomar property occurred on January 15, 2006, and the closing on
the Maxroy property occurred on January 17, 2006.  

          Ramani and Silaski took the position
that, because Pruneda had terminated his association with Urban Living before
the closings on the properties, he was no longer entitled to his share of commissions
on the sales.  As support, they relied on
a provision in Urban Living’s employee handbook, which provides, in part, “When
leaving [Urban Living], ALL listings will remain with [Urban Living] and any
commissions paid from the sale of such listings will belong solely to [Urban
Living].”  Ramani and Silaski notified
the title company handling the closings that Pruneda should not share in the commissions
for either property.  Pruneda received no
commissions from either property sale.  

          On May 4, 2006, Pruneda filed a wage claim
with the Texas Workforce Commission (TWC). 
Pruneda alleged that Urban Living had failed to pay him $29,274 in
commissions, including $26,518 for the Moxroy property sale and $2,756 for the
Bomar sale.  In a preliminary-wage
determination order issued by TWC on June 21, 2006, Urban Living was ordered to
pay the full $29,274 in commissions sought by Pruneda.  Urban Living timely appealed the preliminary
determination to TWC’s Wage Claim Tribunal. 
The tribunal conducted two hearings on Urban Living’s appeal.  

          On January 26, 2007, the tribunal
issued its written decision rescinding the preliminary-wage order and dismissing
Pruneda’s wage claim on the merits.  In
support of its decision, the tribunal relied on the provision in Urban Living’s
handbook providing, “When leaving [Urban Living], ALL listings will remain with
[Urban Living] and any commissions paid from the sale of such listings will
belong solely to the [Urban Living].”  The
tribunal noted that the two property sales at issue closed after Pruneda resigned
from Urban Living.  

          On February 21, 2007, Pruneda timely appealed
the tribunal’s decision dismissing his wage claim.  TWC affirmed the wage tribunal’s decision on
April 16, 2007.  In so doing, TWC adopted
the tribunal’s findings of fact and conclusions of law.  TWC notified the parties that the decision became
final 14 days after its issuance, unless TWC reopened the appeal or one of the
parties filed a motion for rehearing. TWC’s notice also informed the parties
that an appeal of the decision could be made by filing a suit.  TWC informed the parties that suit for judicial
review must be filed no later than 30 days after TWC mailed its decision
affirming the dismissal of Pruneda’s wage claim.

          Twenty-five days after the final TWC
decision, Pruneda timely filed suit in district court on May 11, 2007.  Pruneda named Urban Living, Silaski, and TWC
as defendants.  In his original petition,
Pruneda sought “trial de novo review” of TWC’s April 16, 2007 decision.  He alleged that Urban Living and Silaski had
agreed that he would receive forty percent of all net commissions from the two
property transactions.  Pruneda pointed
out that he was the agent when the sales contracts for each property were signed.  Pruneda averred that TWC “failed to
understand that once a binding agreement between a buyer and seller is signed,
the fees are earned.”  He asserted that
TWC “erroneously interpreted the status of the transaction even though there
was a binding agreement for sale, which meant that fees were earned at the time
of the property transaction between Buyer and Seller.”

          Pruneda also asserted common law
claims of breach of contract and quantum meruit against Urban Living and
Silaski.  He sought to recover $29,274 in
commissions and also to recover attorney’s fees.  

          On May 30, 2008, Pruneda filed a
motion for leave to reopen the TWC proceedings to present additional evidence
in the trial court.  Pruneda alleged that
the TWC wage tribunal never heard evidence at its hearings regarding the
provision in Urban Living’s employee handbook, which the tribunal cited as a
basis for dismissing Pruneda’s wage claim. 


          The trial court granted Pruneda’s
motion to reopen on July 3, 2008.  The
court’s order provided that the TWC proceedings were reopened.  The court remanded Pruneda’s wage claim to
TWC for the presentation of additional evidence.  Although not requested by Pruneda in his
motion, the trial court also ordered “[t]hat the Texas Workforce Commission
decision is hereby set aside,” effectively vacating the TWC decision.  

          On August 6, 2008, Pruneda filed a
notice of nonsuit in the trial court with regard to his claims against
TWC.  In the notice, Pruneda explained
that he was filing the nonsuit because the trial court had set aside the TWC
decision.  The notice also indicates that
Pruneda had withdrawn his wage claim with TWC. 
He stated that he was acting in reliance on representations by TWC that
his withdrawal of his wage claim “has the same effect as if the wage claim had
never been brought” by him.  

          Also on August 6, 2008, appellant
filed an amended petition.  Urban Living
and Silaski were the only named defendants. 
TWC was no longer a defendant, and there was no challenge to the
then-vacated TWC decision.  Pruneda also added
a claim for money had and received against Urban Living and Silaski.  

          Pruneda filed a motion for summary
judgment on August 8, 2008.  Pruneda
asserted that he was entitled to judgment as a matter of law against Urban
Living and Silaski on his breach of contract and money had and received
claims.  Pruneda sought damages for $29,274,
representing his share of the commissions that he had earned when he procured
the sales contracts on the Moxroy and Bomar properties. He also sought attorney’s
fees.  

          As summary judgment evidence, Pruneda
offered his own affidavit in which he testified,  

At the time of each of the
real estate transactions made the basis of this suit, I worked as a licensed
real estate agent in the State of Texas on behalf of real estate broker, George
Silaski, and real estate company, [Urban Living].

 

          I
expended valuable time, effort and expense on behalf of Defendants.  Defendants Urban Living and George Silaski
accepted the benefit of my services as a licensed real estate agent.  The real estate commissions I was to be paid
are evidenced by writings signed by Vinod Ramani, President of Urban Living,
who was authorized to sign the documents on behalf of real estate broker, George
Silaski, and real estate company, Urban Living. 
The writings were delivered to each respective title company.  The commissions were to be paid directly to
me.  Subsequently, Defendants wrongfully
instructed the title companies not to pay me and to direct all payments to
Urban Living.

 

          I
have never received the commissions I earned with respect to these
transactions.  Further, I have never
received my payment or consideration in any form for my work on these real
estate transactions.

 

. . .

 

          Defendants
have conspired, pursued, and continued to pursue, a flagrant course of misrepresentation
in an effort to withhold my commissions.  To that end, the procedure was in place for me
to receive my commissions after they were earned.  George Silaski as broker and Vinod Ramani,
President of Urban Living, took advantage of their unique control to misdirect
my commissions.  Thereafter, they have
made false statements to the Texas Workforce Commission and engaged in an
overall pattern of misrepresentations designed to deny me my property at all
costs.  Defendants’ conduct indicates
untrustworthiness and fails to uphold the ethics required by the Texas Real
Estate Commission.  Further, the Defendants
conspired by concerted action to effectuate all wrongful actions, further
stated herein, that resulted in damages.

 

          I
provided valuable services which Defendants accepted. Defendants knew that I
expected to be compensated for these services, but failed to compensate me.  I seek actual damages of $29,274.00 for the
commissions wrongfully denied to me by Defendants.

 

          To his affidavit, Pruneda attached the
two invoices that Ramani had signed and sent to the title company.  Pruneda pointed out that the invoices reflect
the amount of real estate commissions he was entitled to receive for his services
in connection with the property sale identified in each invoice.  

          Pruneda also attached to his affidavit
a letter from the title company that conducted the closing on the Moxroy
property.  The letter is dated February
14, 2006 and is addressed to Ramani and Silaski.  The letter reads, “With reference to the
above subject property, enclosed is a copy of the Settlement Statement and our
check no. 137904 in the amount of $66,407.16 representing 100% payment of the
commission per your letter dated January 12, 2006.”  Pruneda also offered a copy of the referenced
check.  The check was made payable to
Urban Living and noted “Attn: George Silaski.” 
Pruneda explained in his affidavit that the $66,407.16 paid by the title
company was 100 percent of the commissions for the Moxroy property.  He averred that this amount included the 40
percent of the commissions that he was entitled to receive for his services as the
intermediary agent on the property sale. 


          As summary judgment evidence, Pruneda also
attached several documents relating to the two real estate transactions.  These documents include the broker
registration agreement for the Moxroy sale and the sales contract for the Bomar
transaction.  

          To support his attorney’s fees
request, Pruneda filed his attorney’s affidavit with his motion for summary
judgment.  Pruneda’s counsel testified in
his affidavit that Pruneda would incur $17,243.72 in pursuing his claims in the
trial court. 

          Urban Living and Silaski (hereafter, collectively
“appellants”) filed a response to Pruneda’s motion for summary judgment.  They asserted that Pruneda “has failed to
provide this Court with evidence that there is an enforceable contract between
himself and Defendants regarding commissions to be paid to him for the transactions
at issue in this lawsuit.”  

          In response to the motion for summary
judgment, Urban Living and Silaski also pointed to the policy in Urban Living’s
employee handbook providing, “When leaving [Urban Living], ALL listings will
remain with [Urban Living] and any commissions paid from the sale of such
listings will belong solely to the [Urban Living].”  Appellants appended the provision of the
employee handbook to their response.  

          In addition, appellants offered
Ramani’s affidavit.  Ramani explained
that Pruneda had voluntarily resigned his employment with Urban Living on
January 2, 2006 and that the closings on the two properties for which Pruneda
sought commissions occurred after his resignation.  Ramani averred, 

It is our company policy that any person holding any
sales position, either as an employee or an independent contractor, is not
entitled to real estate commissions once such person leaves the company—unless
there is a separate agreement signed by myself and said person entitling the
same to commissions.  Plaintiff Pruneda
and I did not enter into any such agreement.

 

          Each
person either employed as an independent contractor or an employee of [Urban
Living] is given the Handbook at the onset of his/her employment. Plaintiff was
given the aforementioned Handbook at the onset of his employment and is aware
he is not entitled to commissions unless he remains with our Company. . . .   Attached
as Exhibit B is a true and correct copy of our [Urban Living’s] handbook and is
hereby incorporated by this reference. Specifically, Page 16 of the Urban
Living handbook states that all listings remain with the Company.  Further, any commissions paid from the sale of
such listings belong to the Company if said employee/independent contractor leaves
before the closing.

 

          Appellants also attached Silaski’s
affidavit to their response.  In his
affidavit, Silaski indicated that, although he is a licensed broker, he did not
act as Pruneda’s sponsoring broker with respect to the two real estate
transactions underlying Pruneda’s claims. 


          Pruneda’s motion for summary judgment
was set for submission on September 8, 2006. 
Pruneda filed a late reply to appellant’s response to his motion for
summary judgment on September 23, 2006. 
In the reply, Pruneda only sought summary judgment against Urban Living,
not Silaski.  

          Also on September 23, 2206, Pruneda
filed an amended motion for partial summary judgment.  In the motion, Pruneda sought summary
judgment on his breach of contract and money had and received claims against
Urban Living only.  Pruneda no longer
sought summary judgment against Silaski. 
The amended motion for partial summary judgment clarified that, with
regard to the two real estate transactions, Pruneda, a licensed real estate
agent, was acting as a salesperson, and www.Urban, Inc. was the broker
sponsoring Pruneda.  Silaski was not the
sponsoring broker on the transactions as previously asserted by Pruneda. 

          The trial court granted Pruneda’s
motion for summary judgment on October 21, 2008.  The trial court’s order reflects that it
granted summary judgment based on Pruneda’s originally filed motion and not on
his later-filed motion for partial summary judgment.  

          The trial court signed a final
judgment on December 12, 2008.  In the
judgment, the trial court ordered Urban Living and Silaski to pay $29,274 in
damages to Pruneda.  As the basis for
liability, the trial court identified Pruneda’s claims for breach of contract
and money had and received.  The trial
court also awarded Pruneda attorney’s fees of $17,243.72 for trial and
additional attorney’s fees for an appeal to this court and to the Texas Supreme
Court.

          Appellants filed a motion for new
trial in which they argued for the first time that Pruneda’s common law claims
were barred by res judicata and the election of remedies doctrine.  Appellants acknowledged that they had failed previously
to raise these defenses.  

          Pruneda filed a response to the motion
for new trial to which appellants, in turn, filed a reply.  In their reply, appellants asserted, for the
first time, that the trial court had erred in setting aside the TWC decision
when it granted Pruneda’s motion for leave to reopen the TWC proceedings.  The trial court denied appellant’s motion for
new trial on February 4, 2009.  

          Appellants also filed a post-judgment
motion to dismiss, asserting that the trial court lacked subject-matter
jurisdiction over the case.  The trial
court did not rule on the motion.

          Appellants now appeal the trial
court’s judgment against them.

Jurisdiction,
Res Judicata, and Election of Remedies

          Appellants’ second issue reads, “The
trial court’s summary judgment is void because the trial court lacked subject-matter
jurisdiction and the final TWC order barred a subsequent suit on common law
claims seeking the same unpaid commissions.” 
Appellants present their third issue as follows: “Plaintiff’s suit is also
barred by election of remedies, as he knowingly chose to pursue an administrative
remedy to final decision in lieu of proceeding in district court on his common
law claims.”  In their fourth issue,
appellants contend, “Pruneda obtained a final decision from the TWC and thus
was barred by res judicata from filing suit for common law claims against the
same parties for the same commissions.”  

          As briefed, appellants have
intertwined issues of subject-matter jurisdiction with issues of res judicata
and election of remedies.  For this
reason, we will discuss the issues together. 


 

A.      Appellants’
Affirmative Defenses 

          1.       Jurisdictional Plea vs. Plea in Bar

          We begin by recognizing that res
judicata and election of remedies are affirmative defenses on the merits.  See France v. American Indem. Co., 648 S.W.2d 283, 285 (Tex. 1983) (election of remedies); W. Dow Hamm III Corp. v. Millennium Income
Fund, L.L.C, 237 S.W.3d 745, 755 (Tex. App.—Houston [1st Dist.] 2007, no
pet.) (res judicata).  Here, appellants
assert that, because Pruneda had already obtained a final administrative
decision on the merits from TWC, res judicata and election of remedies barred
Pruneda from pursuing his common law claims to recover unpaid commissions in
the trial court.  See Igal v. Brightstar
Information Tech. Group, Inc., 250 S.W.3d 78, 93 (Tex. 2008) (holding that
res judicata barred plaintiff from recovering on common law claims for wages
when a final TWC decision on the merits had previously been rendered on the
same wage claims against plaintiff).  

          Appellants
frame this argument as a jurisdictional one; that is, they assert that the
final TWC decision operated to deprive the trial court of subject-matter
jurisdiction over Pruneda’s common law claims for unpaid commissions.  We disagree.

          Because
they pertain to the merits of a case
and a plaintiff’s ultimate right to recover, res judicata and election of remedies are pleas in bar, not jurisdictional
pleas.  See Tex. Hwy. Dep’t v. Jarrell, 418 S.W.2d 486, 488 (Tex. 1967); Kelley v. Bluff Creek Oil Co., 309
S.W.2d 208, 214 (Tex. 1958).  If a plea in bar is sustained, a
take-nothing judgment finally disposing of the controversy will be rendered on
the merits for the defendant.  See Jarrell, 418 S.W.2d at 488; Kelley, 309 S.W.2d at 214.  In contrast, a plea to the jurisdiction is a
challenge to the court’s power to hear the suit, which, if sustained, requires
dismissal of the case.  See Jarrell, 418 S.W.2d at 488; see Nat’l
Life Co. v. Rice, 167 S.W.2d 1021, 1024 (Tex. Comm’n App. 1943) (defining jurisdiction
as “the power conferred upon a court by the Constitution and laws to determine
the merits of that suit as between the parties and to carry its judgment into
effect”).

          Pruneda filed his wage claim with TWC
pursuant to the Texas Payday Law.  See Tex.
Labor Code Ann. § 61.001–.095 (Vernon 2006 &Vernon Supp. 2010).  The Payday Law provides for administrative
review of claims and then for judicial review of final administrative
decisions.  Holmans, II v. Transource Polymers, Inc., 914 S.W.2d 189, 190 n. 1 (Tex.
App.—Fort Worth 1995, writ denied); see Tex. Labor Code Ann. §§ 61.052,
61.0525, 61.055, 61.062 (Vernon Supp. 2010 & Vernon 2006).  

          Appellants acknowledge that the Payday
Law is not an employee’s sole and exclusive remedy for a claim for unpaid past
wages, but, rather, is an alternative remedy that is cumulative of common-law
remedies.  Tricon Tool & Supply, Inc. v. Thumann, 226 S.W.3d 494, 511
(Tex. App.—Houston [1st Dist.] 2006, pet. denied); Holmans, 914 S.W.2d at 192–93.  As a result, a claimant can seek recovery of
unpaid wages by filing a claim pursuant to the Payday Law with TWC or by filing
suit in a court of law to assert common-law claims.  Appellants correctly point out that a wage
claimant must choose whether he will pursue his wage claim by filing an
administrative claim or by filing a lawsuit. 
See Igal, 250 S.W.3d at
92–93.  Appellants are also correct in
asserting that, once a claimant has pursued his claim to a final determination
or judgment, whether with TWC or in a court of law, he cannot then pursue the
alternative avenue of recourse.  See id. 
Appellants are incorrect, however, in asserting that the claimant is
jurisdictionally barred from pursuing the wage claim in the alternate
forum.  The Texas Supreme Court’s analysis
in Igal demonstrates that a claimant,
who has pursued an administrative claim with TWC to a final wage determination,
is barred by res judicata, not by some jurisdictional impediment to pursuing
common law claims in a court of law.  See id. 


          Appellants’ res judicata and election
of remedies assertions, and the arguments underlying them, relate to the merits
of Pruneda’s claims and his entitlement to summary judgment.  See
Kelley, 309 S.W.2d at 214.  Had they
successfully presented these defenses, appellants would have been entitled to a
take-nothing judgment against Pruneda on his common law claims.  See Jarrell,
418 S.W.2d at 488; Kelley, 309 S.W.2d
at 214; see also Igal, 250 S.W.3d at 93.  Appellants would not have been entitled to a
dismissal of Pruneda’s common-law claims for lack of jurisdiction.[1]  See Jarrell,
418 S.W.2d at 488; see also Igal, 250
S.W.3d at 93 

          1.       Preservation
of Affirmative Defenses 

          The party asserting an affirmative
defense, such as res judicata or election of remedies, bears the burden of
pleading and proving its elements.  See Compass Bank v. MFP Financial Services,
Inc., 152 S.W.3d 844, 851 (Tex. App.—Dallas 2005, pet. denied); Welch v. Hrabar, 110 S.W.3d 601, 606
(Tex. App.—Houston [14th Dist.] 2003, pet. denied).  Rule of Civil Procedure 94 requires a party to
expressly plead those affirmative defenses listed in the rule “and any other
matter constituting an avoidance or affirmative defense.”  Tex. R.
Civ. P. 94.  If an affirmative defense is not pleaded or
tried by consent, it is waived.  See RE/MAX of Tex., Inc. v. Katar Corp.,
961 S.W.2d 324, 327–28 (Tex. App.—Houston [1st Dist.] 1997, pet. denied).

          Here, appellants did not affirmatively
plead res judicata or election of remedies. 
In their reply brief, appellants contend that their failure to plead the
defenses did not result in waiver. 
Appellants point to Pruneda’s original petition in which he mentioned and
sought review of the adverse TWC decision. 
Citing Holladay v. CW & A,
Inc., appellants assert that “[t]he
mere mention of the prior decision was enough to make the res judicata defense ‘apparent
on the face of the plaintiff’s pleadings.’” 
60 S.W.3d 243, 246 (Tex. App.—Corpus Christi 2001, pet. denied).  The propriety of such assertion aside, we
conclude that appellants have not preserved for appeal their assertion that the
defenses of res judicata and election of remedies precluded summary judgment on
Pruneda’s common law claims.  When a
party contends that summary judgment in favor of a plaintiff is improper
because of an affirmative defense, it must do more than merely plead that
defense.  Kirby Exploration Co. v. Mitchell Energy Corp., 701 S.W.2d 922, 926
(Tex. App.—Houston [1st Dist.] 1985, writ ref’d n.r.e.).  An affirmative defense will prevent summary
judgment in favor of a plaintiff only if the defendant supports each element of
his affirmative defense by summary judgment evidence. Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc., 106 S.W.3d
118, 124 (Tex. App.—Houston [1st Dist.] 2002, pet. denied).

          In their response to Pruneda’s motion
for summary judgment, appellants did not assert or present evidence that the
affirmative defenses of res judicata and election of remedies defeated
Pruneda’s request for summary judgment.  Thus,
appellants cannot now successfully argue on appeal that the summary judgment should
be reversed based on these defenses.  See Kirby Exploration Co., 701 S.W.2d at
926.

          Moreover, Pruneda asserts that the TWC
decision no longer serves as a basis to support the defenses of res judicata
and election of remedies.  He points out
that the trial court set aside the TWC decision when it granted Pruneda’s
motion to re-open the TWC proceeding for the presentation of additional
evidence.  On appeal, appellants attack
Pruneda’s position by arguing that the trial court’s act of setting aside the
TWC decision was without basis in the law and was, therefore, in error.  

          Appellants did not raise this argument
in their response to Pruneda’s motion for summary judgment or at any time
before the trial court granted summary judgment in Pruneda’s favor.  Appellants first presented this argument to
the trial court in their reply to Pruneda’s response to appellants’ motion for
new trial.  

          Issues that a nonmovant contends avoid summary judgment that
are not expressly presented to the trial court by written answer or other
written response to the summary judgment motion are waived on appeal.  See Tex. R. Civ. P. 166a(c); see also D.R. Horton-Texas, Ltd. v. Markel
Intern. Ins. Co., Ltd., 300 S.W.3d 740, 743 (Tex. 2009); City of Houston v. Clear Creek Basin Auth.,
589 S.W.2d 671, 678 (Tex. 1979).  Because
they did not timely raise their assertion that the trial court improperly set
aside the TWC decision, we cannot consider it on appeal as grounds for
reversing the summary judgment.  See D.R. Horton-Texas, 300 S.W.3d at 743; Clear Creek, 589 S.W.2d at 678; see
also Unifund CCR Partners v. Weaver, 262 S.W.3d 796, 797–98 (Tex. 2008) (concluding
that argument first raised by summary judgment non-movant in post-judgment
filing did not preserve argument for appeal). 
         

B.      Jurisdictional Arguments

          Subject-matter jurisdiction is a question of
law, which we review de novo. Tex. Dep’t
of Parks & Wildlife v. Miranda, 133 S.W.3d 217, 226 (Tex. 2004).  Subject-matter jurisdiction is essential for a
court to have authority to decide a case; it is never presumed, cannot be
waived, and can be raised any time.  See Alfonso v. Skadden, 251 S.W.3d 52,
55 (Tex. 2008).

          Here, appellants present only two
arguments that truly can be construed to challenge subject-matter jurisdiction.  One such argument is appellants’ assertion that
Pruneda failed to timely seek judicial review of the final TWC decision as
statutorily required.[2]  

          Section 61.062 of the Payday Law governs
the procedure for seeking judicial review of a final TWC decision.  The section provides as follows: 

(a)  A party
who has exhausted the party’s administrative remedies under this chapter, other
than a motion for rehearing, may bring a suit to appeal the order. 

 

(b)  The suit
must be filed not later than the 30th day after the date the final order is
mailed. 

 

(c)  The
commission and any other party to the proceeding before the commission must be
made defendants in the suit. 

 

(d)  The suit
must be brought in the county of the claimant’s residence. If the claimant is
not a resident of this state, the suit must be brought in the county in this
state in which the employer has its principal place of business. 

 

(e)  An appeal
under this subchapter is by trial de novo with the substantial evidence rule
being the standard of review in the manner as applied to an appeal from a final
decision under Subtitle A, Title 4. 

 

 

Tex. Labor Code Ann. § 61.062 (Vernon 2006).

          The record shows that Pruneda filed his
original petition in the trial court less than 30 days after the final TWC
decision was mailed.  See Tex.
Labor Code Ann. § 61.062(b).  Appellants
do not dispute this.  Instead, appellants
contend that Pruneda missed the 30-day deadline because he did not properly
plead his appeal of the TWC decision.  Specifically,
appellants assert, “Pruneda never invoked the applicable statute [section
61.062],” when he filed his original petition. 
Appellants point out that Pruneda did not cite Labor Code section 61.062
in his original petition.  Instead, Pruneda
cited two provisions of the Labor Code, sections 212.201 and 212.206, which pertain
to judicial review of a TWC decision regarding unemployment claims, not unpaid wage
claims.  

          In his original petition, Pruneda
named TWC as a defendant.  Pruneda
pleaded, “This petition seeks trial de novo of the decision of the [Texas
Workforce] Commission in Commission Appeal Number 06-056857-0, Commission
Appeal Decision Date April 16, 2007, which was an appeal of hearing officer M.
Miller’s Findings of Fact, Conclusions of Law and Decision mailed on January
26, 2007.”  Pruneda further pled, “The
decision of the Commission is not supported by substantial evidence.”  The original petition made clear that Pruneda
was seeking to recover unpaid wages and that he was appealing TWC’s decision that
disallowed his recovery of unpaid commissions. 
The original petition cannot be read to assert an appeal from an agency
unemployment decision.  

          Texas
follows a “fair notice” standard for pleading, which looks to whether the
opposing party can ascertain from the pleading the nature and basic issues of
the controversy and what testimony will be relevant.  See Horizon/CMS
Healthcare Corp. v. Auld, 34 S.W.3d 887, 896 (Tex. 2000) (holding that
defendant’s answer gave fair notice that defendant sought to invoke
punitive-damages cap, even though defendant had cited wrong statute).  Moreover, the law requires us to give effect to the substance of a
pleading rather than its title or form.  See State Bar v. Heard, 603 S.W.2d 829,
833 (Tex. 1980) (orig. proceeding); see
also In re S.A.M, No. 14-08-01068-CV, 2010 WL 3230621, at *2 (Tex.
App.—Houston [14th Dist.] Aug. 17, 2010, no pet.) (concluding that substance of
petition governs over petition’s title).

          Consistent
with these principles, we give effect to the substance of Pruneda’s original
petition regardless of which section of
the Labor Code Pruneda cited in the pleading. 
The plain language of the original petition shows that Pruneda was
seeking judicial review of the TWC decision denying his wage claim.  This can be ascertained from the
pleading.  Thus, Pruneda timely sought
judicial review of the final TWC decision when he filed his original petition.  See Tex. Labor Code Ann. § 61.062.

          The other argument asserted by
appellants that raises a jurisdictional challenge is appellants’ contention
that TWC was a necessary party to Pruneda’s maintenance of his suit in the
trial court.  Appellants contend that,
because TWC was a necessary party, the trial court lost subject-matter
jurisdiction when Pruneda nonsuited his claims against TWC and filed his first
amended petition in which he abandoned his claims against TWC.  

          We agree that, while Pruneda sought to
appeal the administrative decision, TWC was required to be a defendant in the
suit.  See Tex. Labor Code Ann.
§ 61.062(c).  We also agree with
Pruneda that once the trial court set aside the final TWC decision, Pruneda
dismissed his wage claim with TWC, and he abandoned judicial review of the TWC
decision, TWC was no longer a necessary party. 
In fact, it was not a proper party at that point.  All that then remained pending in the trial court
were Pruneda’s common law claims against appellants.  TWC was not a defendant to these claims.  Thus, appellants’ second jurisdictional argument
is without merit.

          For the
reasons discussed, we overrule appellants’ second, third, and fourth issues.

Summary
Judgment

          In their
fifth issue, appellants assert that the trial court erred in granting summary
judgment against Urban Living and Silaski in favor of Pruneda.  The trial court granted summary judgment
against appellants on Pruneda’s claims for breach of contract and money had and
received.  

A.      Standard
of Review 

          To prevail
on a Rule 166a(c) summary-judgment motion, a movant must prove that there is no
genuine issue regarding any material fact and that it is entitled to judgment
as a matter of law.  See Tex. R. Civ. P. 166a(c);
Little v. Tex. Dep’t of Criminal Justice,
148 S.W.3d 374, 381 (Tex. 2004).  A
plaintiff moving for summary judgment must conclusively prove all essential
elements of its claim.  See Rhone-Poulenc, Inc. v. Steel, 997
S.W.2d 217, 223 (Tex. 1999).  A matter is
conclusively established if reasonable people could not differ as to the
conclusion to be drawn from the evidence.  See City
of Keller v. Wilson, 168 S.W.3d 802, 816 (Tex. 2005).

          If the movant meets its burden, the
burden then shifts to the nonmovant to raise a genuine issue of material fact
precluding summary judgment.  See Centeq Realty, Inc. v. Siegler, 899
S.W.2d 195, 197 (Tex. 1995).  The
evidence raises a genuine issue of fact if reasonable and fair-minded jurors
could differ in their conclusions in light of all of the summary-judgment
evidence.  Goodyear Tire & Rubber Co. v. Mayes, 236 S.W.3d 754, 755 (Tex. 2007).

          On appeal,
we review de novo a trial court’s summary judgment ruling.  See Mann
Frankfort Stein & Lipp Advisors, Inc. v. Fielding, 289 S.W.3d 844, 848
(Tex. 2009).  In our review, we consider
all the evidence in the light most favorable to the nonmovant, crediting
evidence favorable to the nonmovant if reasonable jurors could, and
disregarding contrary evidence unless reasonable jurors could not.  See Mack
Trucks, Inc. v. Tamez, 206 S.W.3d 572, 582 (Tex. 2006).

B.      Breach
of Contract

          Appellants assert that the trial court
erred in granting Pruneda’s motion for summary judgment on Pruneda’s
breach-of-contract cause of action.  

          Parties form a valid and enforceable contract when the
following elements are present: (1) an offer, (2) an acceptance in strict
compliance with the terms of the offer, (3) meeting of the minds, (4) each
party’s consent to the terms, and (5) execution and delivery of the contract
with the intent that it be mutual and binding. 
See Winchek v. Am. Express Travel Related Servs. Co., 232 S.W.3d 197,
202 (Tex. App.—Houston [1st Dist.] 2007, no pet.); Hubbard v. Shankle, 138 S.W.3d 474, 481 (Tex. App.—Fort Worth 2004,
pet. denied).  To be entitled to summary judgment on his breach-of-contract claim, Pruneda
was required to prove, as a matter of law, the following essential elements: (1)
the existence of a valid contract; (2) performance or tendered performance by
the plaintiff; (3) breach of the contract by the defendant; and (4) damages
sustained as a result of the breach.  See B
& W Supply, Inc. v. Beckman, 305 S.W.3d 10, 16 (Tex. App.—Houston [1st
Dist.] 2009, pet. denied).

          1.       Urban Living

                   a.       Pruneda
Met His Summary Judgment Burden

          “A breach of contract occurs when a
party fails or refuses to do something he has promised to do.”  Id. (quoting
Mays v. Pierce, 203 S.W.3d 564, 575
(Tex. App.—Houston [14th Dist.] 2006, pet. denied)).  Here, Pruneda offered summary-judgment evidence
conclusively establishing that Urban Living breached its contract with him to
share in the real estate commissions earned on the Moxroy and Bomar properties.
 

          Pruneda’s affidavit testimony indicates
that, with respect to the two properties, Pruneda worked as a real estate agent
on behalf of Urban Living.  Pruneda’s
testimony further indicates that, in exchange for the “valuable time, effort,
and expense” that he expended in procuring the contracts on the Moxroy and Bomar
properties, Urban Living had agreed that Pruneda would be paid
commissions.  

          The two invoices offered by Pruneda
further evidence the agreement between Urban Living and Pruneda to split the
commissions.  The invoices, signed by
Ramani and sent to the title company, show that Urban Living would receive 60
percent of the commissions and that Pruneda would receive approximately 40
percent of the commissions.  The invoices
show that Urban Living and Pruneda had reached an agreement to share the
commissions earned on the two properties.  The invoices further establish that the amount
of the commissions claimed by Pruneda are the same amounts reflected in the
invoices.  

          Pruneda’s evidence also shows that
Urban Living breached its agreement to split the commissions.  Pruneda testified in his affidavit that Urban
Living caused his commissions to be “misdirected” to Urban Living.  The letter from the title company offered by
Pruneda further evidenced that Ramani, Urban Living’s president, instructed the
title company not to pay Pruneda his share of the commissions.  The summary judgment evidence also shows that
100 percent of the commissions were paid to Urban Living and that Pruneda
received no commissions.  

          Viewing Pruneda’s evidence in favor of
Urban Living does not change the only reasonable conclusion that can be drawn
it: Urban Living and Pruneda had a contract to share in the real estate
commissions generated from the sale of the Moxroy and Bomar properties, and
Urban Living breached the contract when it diverted Pruneda’s share of the
commissions to itself.  Pruneda met his
summary judgment burden to establish his breach of contract claim against Urban
Living as a matter of law.  

          Urban Living contends that Pruneda did
not show that he was entitled to receive the commissions once he resigned from
Urban Living.  It is undisputed that
Pruneda resigned before the closings on the two properties.  Urban Living points out that the invoices
offered pre-date Pruneda’s resignation from Urban Living.  Urban Living asserts that Pruneda’s right to
receive commissions terminated when he left Urban Living’s employment.  

          Contrary to Urban Living’s position,
Pruneda’s evidence shows that he earned the commissions when he procured the sales
contracts on the two properties.  Pruneda’s
affidavit testimony indicates that the commissions were in exchange for the many
hours of work he expended and the out-of-pocket expenses he incurred in
procuring the contracts.  Pruneda performed
his obligation under the agreement to share commissions when he procured the
contracts.  Pruneda procured the sales
contracts many months before he resigned from Urban Living.  Pruneda was not required to offer anything
more to show that he had earned the commissions.  

          It was part of Pruneda’s summary-judgment
burden to show a specific agreement to share commissions beyond his date of resignation.  Pruneda met his summary-judgment burden when
he conclusively showed an agreement to split commissions, his performance of his
contractual obligation, and Urban Living’s breach the agreement.  At that point, the burden shifted to Urban
Living, as nonmovant, to raise a genuine issue of material fact precluding
summary judgment.  See Centeq Realty, 899 S.W.2d at 197.

                   b.      Urban Living Did Not Meet Its Summary Judgment Burden

          To support its summary-judgment
response, Urban Living offered Ramani’s affidavit and excerpts from its
employee handbook.  Urban Living relies
heavily on the provision in the handbook which provides, “When leaving [Urban
Living], ALL listings will remain with [Urban Living] and any commissions paid
from the sale of such listings will belong solely to the [Urban Living].”  Urban Living asserts this shows that Pruneda
was no longer entitled to share in the commissions after Pruneda resigned his
employment.  Urban Living contends that
Pruneda’s receipt of commissions was conditioned on his continued employment
with Urban Living.  

          We must determine whether the evidence
offered by Urban Living in support of its response raises a genuine issue of
material fact regarding whether the parties had agreed to such condition.  We conclude that Urban Living has not met its
burden.

          In his affidavit, Ramani testified
that it was Urban Living’s “company policy” that employees did not receive
commissions once they left the company.  Ramani
also averred that Pruneda was given a copy of the employee handbook containing
the continued-employment provision when he began working for Urban Living.  Ramani averred, “[Pruneda] is aware he is not
entitled to commissions unless he remains with [Urban Living].”  Ramani stated that the only exception to this
policy occurs when Urban Living and the employee have entered into a separately
signed, written agreement stating that the employee will receive the
commissions after he leaves Urban Living. 
Ramani testified that there was no such agreement with Pruneda. 

          Pruneda cites Texas case authority
holding that a broker or salesperson earns his commission at the time he
procures the sales contract on the property. 
See Frady v. May, 23 S.W.3d
558, 562–63 (Tex. App.—Fort Worth 2000, pet. denied) (citing Goodwin v. Gunter, 185 S.W. 295, 296–97
(Tex. 1916)).  Pruneda also points out
that Texas courts have rejected the contention that a broker’s right to a
commission hinges on his continued employment through the time of the final
consummation of the sale.  See id. 
Pruneda relies on this legal precept to refute Urban Living’s claim that
Pruneda’s receipt of his share of the commissions was conditioned on his
continued employment with Urban Living. 
However, courts have also recognized that parties can agree to vary from
this generally applicable rule by incorporating express language into their
sales commission agreement.  See id.; see also Ramesh v. Johnson, 681 S.W.2d 256, 259 (Tex. App.—Houston
[14th Dist.] 1984, writ ref’d n.r.e) (“We agree with appellant that where the
parties to a contract make the payment of a commission expressly contingent on
a closing or other event, and that event does not occur, no obligation exists
to pay the commission.”).  Thus, if it is
shown that the parties agreed that Pruneda’s receipt of the commissions in this
case was conditioned on his continued employment through the closing on each
sales contract, such condition may have barred his recovery of damages.

          The question that must be answered is
whether the handbook provision operates to bar Pruneda from recovering his
share of the commissions on the Moxroy and Bomar properties.[3]  We agree with Pruneda that it does not.  As he points out, the language of the
provision demonstrates that it does not apply to commissions that have already been
earned on a property when the employee leaves Urban Living.  

          To reiterate, the provision states,
“When leaving [Urban Living], ALL listings will remain with [Urban Living] and
any commissions paid from the sale of such listings will belong solely to the
[Urban Living].”  Pruneda avers that a
“listing” does not result in a commission; rather, a commission results from
the procurement of a sales contract.  He
asserts, “A listing pertains to a solicitation for which no sale has been
procured.”    

          Pruneda
contends, and we agree, that the handbook provision does not address listings
that culminated into sales contracts before an employee leaves.  Rather, it limits an employee’s right to
receive commissions on a sales contract procured on a listing after the
employee leaves Urban Living.  As a
practical matter, the provision deprives an employee of commission on a listing
on which he had worked but had not yet procured a sales contract at the time he
left Urban Living.  When a sales contract
is later procured, the provision would preclude the employee from seeking
compensation for the work he had performed on the listing before leaving Urban
Living.  

          By its language, the provision does
not address a sales commission earned by an employee who already had procured a
sales contract before leaving Urban Living. 
The provision does not disturb the general rule regarding when
commissions are earned.  Nor does it preclude
Pruneda from receiving the Moxroy and Bomar commissions, which he earned months
before leaving Urban Living when those properties sold, even though the
closings had not yet taken place.  Thus,
the employee handbook does not raise a genuine issue of material fact or
otherwise serve to defeat Pruneda’s summary judgment evidence.  

          Urban Living also assails the summary
judgment on the ground that any agreement between Urban Living and Pruneda under
which Urban Living was obligated to directly pay Pruneda commissions would be
illegal.  In its reply brief, Urban
Living contends, “Pruneda has failed to counter the dispositive point made in
Appellants’ initial brief that any contract requiring UL or Silaski to pay him
commissions is void and unenforceable because he is statutorily prohibited from
receiving commissions from UL or Silaski, and they are likewise statutorily
prohibited from paying him commissions.”  To support its argument, Urban Living cites
section 1101.651 of the Real Estate Licensing Act (“RELA”), which, in part,
provides as follows:

(b) A salesperson may not accept compensation for a
real estate transaction from a person other than the broker with whom the salesperson
is associated or was associated when the salesperson earned the compensation.  

 

(c) A salesperson may not pay a commission to a
person except through the broker with whom the salesperson is associated at
that time.

 

Tex. Occ. Code Ann. §
1101.651(b), (c) (Vernon 2004).  Urban
Living points to the sales documents offered by Pruneda which show that neither
Urban Living nor Silaski was the sponsoring broker on the Moxroy and Bomar
transactions.  Instead, the documents
show www.Urban,Inc. as the broker listed in the documents.  Urban Living asserts that RELA section 1101.651
mandates that only www.Urban,Inc. could directly pay Pruneda.  Urban Living contends that a claim by Pruneda
to recover commissions directly from Urban Living violates section 1101.651.       

          An analysis of the record shows that
Urban Living’s argument is flawed. 
Pruneda’s summary judgment evidence proved a contract between Pruneda
and Urban Living to split commissions on the Moxroy and Bomar transactions.  Pruneda’s summary judgment evidence does not
show a contract between him and Urban Living under which Urban Living was
obligated to directly pay Pruneda his commissions.  Presumably, Urban Living and Pruneda would
have each been paid that party’s respective share of the commissions from a legally-authorized
third party.  We note that Urban Living
was ultimately paid 100 percent of the commissions on the Moxroy transactions
with a check from the title company.  The
check bore a notation that it was sent to the attention of Silaski, who is a
licensed broker in Texas and a principal of corporate broker www.Urban,Inc.,
which is the sponsoring broker on the transactions.

          Moreover, to the extent that the
judgment in this case requires Urban Living to pay money to Pruneda, such payment
is not prohibited by RELA section 1101.651. 
Pruneda is seeking, and Urban Living would pay, damages to Pruneda for
breaching the contract to share commissions. 
In other words, Urban Living would not pay commissions to Pruneda; it
would pay him breach-of-contract damages.

                   c.       Conclusion
Regarding Pruneda’s Breach of Contract Claim                           Against Urban Living 

 

          We conclude that Pruneda conclusively
showed (1) he had a contract with Urban Living to split the commissions earned on
the Moxroy and Bomar property transactions, (2) he performed his contractual
obligation to procure the sales contracts, (3) and Urban Living breached the
contract when it misdirected Pruneda’s share of the commissions to itself.  Stated differently, Pruneda met his summary
judgment burden by proving his breach of contract claim against Urban Living as
a matter of law.  We further conclude
that Urban Living did not meet its summary judgment burden as nonmovant.  Urban Living did not offer evidence that
raised a genuine issue of material fact on the elements of Pruneda’s contract
cause of action.  We hold that Pruneda is
entitled to summary judgment against Urban Living on his breach of contract
claim.  

          2.       Silaski 

          We next determine whether Pruneda
satisfied his summary judgment burden against Silaski with regard to his breach
of contract claim.  We conclude that he
did not.  Vital to Pruneda’s successful
breach of contract claim against Urban Living are the invoices evidencing the
agreement between Pruneda and Urban Living to share the commissions on the
Moxroy and Bomar contracts procured by Pruneda. 
The invoices serve to link together the other evidence offered by
Pruneda to support his breach of contract claim against Urban Living.  The invoices provide context to the letter
from the title company and to the check paying Urban Living 100 percent of the Moxroy
commissions.  In short, the invoices are
the glue holding Pruneda’s summary judgment evidence together.  

          Although generally averred by him in
his affidavit, Pruneda did not show that Ramani was acting on behalf Silaski
when he signed the invoices.  To the
contrary, it appears from the invoices that Ramani was acting on behalf of Urban
Living.  Evidence suggesting that Silaski
caused the commissions to be diverted to Urban Living or that he, in some
undefined manner, benefited financially from Pruneda’s procurement of the sales
contracts does not show an agreement between Pruneda and Silaski to share
commissions.  

          Pruneda did not offer other evidence
to show that he had an agreement with Silaski regarding the commissions.  Without such evidence, Pruneda failed to show
the existence of a valid contract between him and Silaski with respect to payment
of, or sharing of, commissions.[4]       

          We conclude that Pruneda did not conclusively
prove his breach of contract claim against Silaski.  Thus, Pruneda is not entitled to summary
judgment against Silaski on this claim.  

C.      Money
Had and Received

          In addition
to breach of contract, the trial court rendered summary judgment based on
Pruneda’s claim for money had and received.[5]  We agree with appellants that this cause of
action cannot support summary judgment on the record presented.

          To recover on a claim for money had
and received, a plaintiff must show that the defendant holds money which in
equity and good conscience belongs to him.  Staats
v. Miller, 243 S.W.2d 686, 687 (Tex. 1951); Edwards v.
Mid-Continent Office Distributors, L.P., 252 S.W.3d 833, 837 (Tex. App.—Dallas 2008, pet. denied).  A cause of action for money had and received
is not based on wrongdoing, but, instead, “looks only to the justice of the
case and inquires whether the defendant has received money which rightfully
belongs to another.”  Everett v. TK-Taito, L.L.C., 178 S.W.3d
844, 860 (Tex. App.—Fort Worth 2005, no pet.); Amoco Prod. Co. v. Smith, 946 S.W.2d 162, 164 (Tex. App.—El Paso
1997, no writ).  In short, it is an
equitable doctrine applied to prevent unjust enrichment.  Hunt v.
Baldwin, 68 S.W.3d 117, 132 (Tex. App.—Houston [14th Dist.] 2001, no pet.);
Phippen v. Deere & Co., 965
S.W.2d 713, 725 (Tex. App.—Texarkana 1998, no pet.).  

          Generally, when a valid, express
contract covers the subject matter of the parties’ dispute, there can be no
recovery under a quasi-contract theory, such as money had and received.  See Fortune Prod. Co. v. Conoco, Inc., 52
S.W.3d 671, 684 (Tex. 2000) (involving claim for unjust enrichment); DeClaire v. G & B McIntosh Family Ltd. P’ship,
260 S.W.3d 34, 49 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (same).  Parties should be bound by their express
agreements, and when a valid agreement already addresses the matter, recovery
under an equitable theory is generally inconsistent with the express terms of
the agreement.  Conoco, 52 S.W.3d at 684; see
Edwards v. Mid-Continent Office Distribs., L.P., 252 S.W.3d 833, 837 (Tex. App.—Dallas
2008, pet. denied) (“The doctrine of unjust enrichment applies the principles
of restitution to disputes that are not governed by a contract between the
parties.”).  

          As discussed, Pruneda has proven the
existence of a contract with Urban Living that covers the subject matter of the
dispute.  Accordingly, summary judgment
cannot be sustained against Urban Living based on Pruneda’s claim for money had
and received.  See Ledig v. Duke Energy Corp., 193 S.W.3d 167, 176 (Tex.
App.—Houston [1st Dist.] 2006, no pet.) (affirming summary judgment for
defendant on plaintiff’s unjust enrichment claim because express contract
covered subject of dispute).

          We further conclude that, on the
record presented, summary judgment is not proper on Pruneda’s money had and
received claim against Silaski.  Pruneda
has not conclusively shown that Silaski “holds money which in equity and good
conscience belongs to him.”  See Staats, 243 S.W.2d at 687.  In his affidavit, Pruneda averred that
Silaski had benefitted from his procurement of the Moxroy and Bomar
contracts.  Pruneda also offered the
check from the title company made payable to Urban Living and sent to the
attention of Silaski.  Pruneda did not,
however, offer evidence conclusively showing that Silaski was holding or in possession
of money that belonged to Pruneda.  For
this reason, Pruneda did not show, as a matter of law, that he was entitled to
summary judgment against Silaski based on money had and received.  

          To summarize, Pruneda proved, as a
matter of law, that he was entitled to summary judgment against Urban Living
for breach of contract.  For this reason,
Pruneda is not entitled to summary judgment against Urban Living for money had
and received.  On this record, Pruneda
did not prove, as a matter of law, that he was entitled to summary judgment
against Silaski for breach of contract or for money had and received.[6]  

          Accordingly, we overrule appellants’
fifth issue to the extent that it challenges the summary judgment based on
breach of contract against Urban Living. 
We otherwise sustain appellants’ fifth issue.  

D.      Segregation of Attorney’s Fees

          In their
sixth issue, appellants contend that the trial court erred in awarding Pruneda
his attorney’s fees in the amount of $17,243.72 for trial, and additional sums
for appellate attorney’s fees, because Pruneda did not segregate his
recoverable attorney’s fees from his unrecoverable fees.  

          We first clarify that, because we have
determined that summary judgment was not appropriate against Silaski on the
contract and quasi-contract claims, Pruneda is not entitled to the attorney’s
fees awarded against Silaski by the trial court.  See
Mustang Pipeline Co. v. Driver Pipeline Co., 134 S.W.3d 195, 201 (Tex. 2004)
(holding that plaintiff must recover actual damages to recover attorney’s fees
in breach of contract action).  In
contrast, Pruneda is entitled to attorney’s fees against Urban Living based on
his successful breach of contract claim, if he has properly proven the fees.  See Tex. Civ. Prac. & Rem. Code Ann. §
38.001(8) (Vernon 2008).  

          When a lawsuit involves multiple
claims or parties, the proponent of attorney’s fees must segregate recoverable
fees from those incurred by parties or on claims for which fees are not
recoverable.  Clearview Props., L.P. v. Prop. Tex. SC One Corp., 287 S.W.3d 132,
143 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).  Attorney’s fees that relate solely to a claim
for which fees are unrecoverable must be segregated.  Tony
Gullo Motors I, L.P. v. Chapa, 212 S.W.3d 299, 313 (Tex. 2006).  

          In his motion for summary judgment,
Pruneda sought attorney’s fees based on Civil Practice and Remedies Code
section 38.001.  Pruneda asserted that
his attorney’s fees claim was “for rendered services, performed labor, and an
oral or written contract.”  See Tex.
Civ. Prac. & Rem. Code Ann. § 38.001 (permitting recovery for
attorney’s fees and costs for variety of claims, including claims for rendered
services, performed labor, or oral or written contract).  This corresponds to Pruneda’s claims for
breach of contract and money had and received on which he sought summary
judgment.

          Significantly, the party seeking to
recover attorney’s fees bears the burden of demonstrating segregation is not
required.  See Hong Kong Dev., Inc. v. Nguyen, 229 S.W.3d 415, 455 (Tex. App.—Houston
[1st Dist.] 2007, no pet.); see also CA
Partners v. Spears, 274 S.W.3d 51, 82 (Tex. App.—Houston [14th Dist.] 2008,
pet. denied).  Here, Pruneda offered the
affidavit testimony of his attorney to support his attorney’s fees
request.  

          Pruneda’s counsel represented him in
both the TWC proceeding and in the trial court. 
Urban Living asserts that counsel failed to segregate the time he spent
pursuing Pruneda’s TWC claim from his common law claims on which the trial
court awarded attorney’s fees.  The
record supports Urban Living’s assertion.

          The record contains several filings prepared
in the trial court that pertain to Pruneda’s claim for judicial review of the
TWC claim.  The record shows that counsel
prepared Pruneda’s original petition, which included a claim for judicial
review of the TWC claim.  Pruneda’s
counsel also prepared Pruneda’s seven page “Motion for Leave to Re-Open Texas
Workforce Commissions Hearing to Present Additional Evidence.”  After the trial court vacated the TWC
decision, counsel prepared and filed Pruneda’s notice of nonsuit informing the
trial court that he was dismissing his claim against TWC.  

          Counsel’s affidavit offered to support
attorney’s fees does not segregate the time that counsel spent preparing the
filings relating to Pruneda’s appeal of the TWC decision from the time that counsel
spent advancing the common law claims on which Pruneda recovered attorney’s
fees.[7]  Counsel averred that his firm had charged
Pruneda reasonable fees for his legal services that were necessary to
representing Pruneda “in this case.”  Counsel
states, inter alia, that “[t]his case involved adjudication of an
administrative law appeal under the substantial evidence rule . . . .”  

          Urban Living cites Tony Gullo Motors as controlling
authority on the issue of segregation of attorney’s fees.  212 S.W.3d at 313–14.  In that case, Chapa, the plaintiff, asserted
claims for breach of contract, violations of the Deceptive Trade Practices Act,
and fraud.  Id. at 303.  The jury awarded
Chapa $20,000 in attorney’s fees.  It was
not clear on which claims the attorney’s fees had been awarded.  See
id.  Tony Gullo Motors objected on
the ground that attorney’s fees were unrecoverable on Chapa’s fraud claim.  Id.
at 310.  

          The court expressed concern that it
needed to address an exception it had previously recognized to the
long-standing rule that fee claimants are always required to segregate fees
between claims for which fees are recoverable and claims for which they are not.  Id. at
311. 
The exception of concern had been created by the court in Stewart Title Guar. Co. v. Sterling, 822
S.W.2d 1, 10 (Tex. 1991).   There, the
court had recognized that, when attorney’s fees rendered are “in connection
with claims arising out of the same transaction and are so interrelated that
their prosecution or defense entails proof or denial of essentially the same
facts,” the fees need not be segregated.  Id. at
11.  The Sterling court had concluded, “Therefore, when the causes of action
involved in the suit are dependent upon the same set of facts or circumstances
and thus are intertwined to the point of being inseparable, the party suing for
attorney’s fees may recover the entire amount covering all claims.”  Id.  

          In Tony Gullo Motors, the court warned that
the Sterling exception “threatened to
swallow” the rule.  See 212 S.W.3d at 311.  The
court explained that the exception had been difficult for courts to
consistently apply and had flooded courts with claims for otherwise
unrecoverable fees.  Id. at 312.  The supreme
court concluded that to the extent it had suggested in Sterling “that a common set of underlying facts necessarily made
all claims arising therefrom ‘inseparable’ and all legal fees recoverable, it
went too far.”  Id. at 313.

          Ultimately, the Tony Gullo Motors court modified Sterling and “reaffirm[ed] the rule that if any attorney’s fees
relate solely to a claim for which such fees are unrecoverable, a claimant must
segregate recoverable from unrecoverable fees.”  Id.  The court clarified, “Intertwined facts
do not make [unrecoverable] fees recoverable; it is only when discrete legal
services advance both a recoverable and unrecoverable claim that they are so
intertwined that they need not be segregated.” 
See id. at 313–14.  This is the rule that we apply today.

          Here, the following legal services
reflected in the record did not advance Pruneda’s common law claims on which he
was entitled to recover attorney’s fees: drafting the portion of the original
petition seeking judicial review of the TWC decision and preparing the motion
to re-open the TWC proceedings for the taking of additional evidence.  Instead, these legal services advanced
Pruneda’s appeal of the TWC decision.  

          Pruneda did not carry his burden to
show that segregation was not required. 
Nor does counsel’s affidavit reflect that he discounted the services related
to the TWC appeal when he calculated the amount of attorney’s fees owed to
Pruneda.  Counsel’s affidavit also does
not reflect the amount or percentage of his time that he spent on the TWC appeal
versus the amount of time he spent advancing the claims on which Pruneda was
entitled to recover his attorney’s fees. 
See id. (“Chapa’s attorneys did not have to keep separate time records
when they drafted the fraud, contract, or DTPA paragraphs of her petition; an
opinion would have sufficed stating that, for example, 95 percent of their
drafting time would have been necessary even if there had been no fraud claim.”);
cf. Med. Specialist Group, P.A. v.
Radiology Assocs., L.L.P., 171 S.W.3d 727, 738 (Tex. App.—Corpus Christi
2005, pet. denied) (“In his affidavit, Radiology Associates’ counsel . . .
testified that his fees for the defense of the case totaled $460,087.00, and
approximately forty percent of these fees were directly related to Saratoga’s
antitrust claims.”).  

          We conclude that, because he did not
segregate the fees, Pruneda did not conclusively establish the attorney’s fees
awarded by the trial court.  

          We sustain appellants’ sixth
issue.  

Conclusion

          To
summarize, we hold that, based on the record presented, (1) summary judgment
was properly granted in favor of Pruneda against Urban Living on Pruneda’s
breach of contract claim; (2) summary judgment was not properly granted against
Urban Living on Pruneda’s money had and received claim; and (3) summary
judgment was not properly granted against Silaski on either of Pruneda’s
claims.  We further hold that the trial
court erred by awarding Pruneda attorney’s fees on the record presented.  

          We affirm
the portion of the trial court’s judgment awarding Pruneda $29,274 in damages
against Urban Living for breach of contact. 
We reverse the remainder of the trial court’s judgment and remand the
case to the trial court for further proceedings.  

 

 

                                                                   Laura
Carter Higley

                                                                   Justice


 

Panel consists of Justices Keyes, Higley, and Bland.











[1]
          Appellants cite Hull v. Davis, 211 S.W.3d 461, 466 (Tex.
App.—Houston [14th Dist.] 2006, no pet.) for the proposition that a trial court
lacks subject-matter jurisdiction over a common law claim to recover wages when
the claimant has already pursued a remedy under the Payday Law with TWC to a
final administrative decision.  The Hull court cites 11th St. Bingo Assoc. v. Simonson, No. 13-02-399-CV, 2004 WL
1117161, at *2-3 (Tex. App.—Corpus Christi May 20, 2004, no pet.) (mem. op.)
for this same proposition.  See Hull, 211 S.W.3d at 466.  We note, however, that at the time of these
decisions, neither court of appeal had the benefit of the supreme court’s
analysis and decision in Igal.





[2]
          Pruneda dismissed TWC from the
suit and abandoned his judicial review of the administrative  decision after the trial court set aside the
final TWC decision.  The summary judgment
in favor of Pruneda, which is the subject of this appeal, is based only on
Pruneda’s common law claims.  Thus,
whether Pruneda properly invoked the trial court’s jurisdiction to judicially
review the TWC decision rendered pursuant to the Payday Law is arguably
moot.  We discuss it for completeness of
review of the issues, which, as briefed, are intertwined and overlapping.  





[3]
          In the trial court, Pruneda
raised a statute of frauds objection regarding the employee handbook.  We note that the Real Estate License Act
(“RELA”) provides that an agreement between real estate license holders to share
commissions need not be in writing.  See Tex.
Occ. Code § 1101.806(a)(1) (Vernon 2004).





[4]
          In addition, the record does not support a
claim that Silaski had agreed, as the sponsoring broker, to pay Pruneda the
commissions.  Pruneda’s affidavit
testimony indicating that Silaski was the sponsoring broker on the two sales
contracts is refuted by the sales documents offered by Pruneda and by Silaski’s
affidavit testimony.  

 





[5]           Appellants also complain that the
trial court improperly based summary judgment on a cause of action not pleaded because it referenced the Real Estate Licensing Act in the recital
portion of its judgment.  Express decretal language in a judgment controls over
recitals.  State v. Brownlow, 319 S.W.3d 649, 653 (Tex. 2010).  The decretal portion of the summary judgment
indicates that the trial court based appellants’ liability on Pruneda’s pleaded
claims of breach of contract and money had and received.  No mention was made of RELA in the decretal
portions of the judgment.





[6]           In his first issue, Silaski
challenges the trial court’s summary judgment against him on the ground that
Pruneda’s amended motion for partial summary judgment was the “live” motion for
summary judgment at the time the trial court granted summary judgment against
him on the originally filed motion. 
Silaski points out that Pruneda did not seek summary judgment against
him in the amended motion.  Because we
have determined that summary judgment was not appropriate against Silaski on
this record, we need not determine Silaski’s first issue.





[7]
          It is undisputed that Pruneda did not
recover, nor could he recover, attorney’s fees          with
respect to his claim seeking judicial review of the TWC decision.  See         Abatement Inc. v. Williams, No. 14-09-00523-CV,
2010 WL 3917308, at *5 (Tex. App.—Houston
[14th Dist.] Oct. 7, 2010, no pet. h.) (recognizing that, while             they are recoverable for breach of
contract claim, attorney’s fees are not      recoverable
for Payday Law claims).