

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-09-00459-CV

TIM CALHOUN, GUSTINE                                    APPELLANTS
GASTON, AND JOSSIE GASTON,
AS HEIR AND ON BEHALF OF THE
HEIRS OF GUSTINE GASTON

V.

F. HALL MOWING COMPANY                                 APPELLEE

------------

FROM THE 153RD DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

Appellants Tim Calhoun and Gustine Gaston[2] filed suit against Appellee F.

Hall Mowing Company. Appellee had been hired to dismantle the central utility

---

[1]*See* Tex. R. App. P. 47.4.

[2]Gustine Gaston died after suit was filed, and Josie Gaston, as heir of Gustine and on behalf of his heirs (collectively referred to hereinafter as Gaston) was substituted in the suit for Gustine.

building on the campus of the University of Texas at Arlington. A switch gear housing building was located inside the central utility building; because the central utility building was being dismantled, roofing contractors (not Appellee) were hired to put a roof on the switch gear housing building to protect it from the elements that it would be exposed to when the central utility building was totally taken down. While Calhoun and Gustine were cutting pipes to dismantle the central utility building for Appellee, a fire broke out on the roof being placed on the switch gear housing building. Calhoun and Gustine alleged that Appellee negligently caused this fire and that, to avoid the fire, they both jumped off of a scissor lift that was eighteen feet in the air and were injured. The trial court granted summary judgment for Appellee on Calhoun's claim. Gaston's claim proceeded to trial, and the trial court granted a directed verdict for Appellee. In two issues, Calhoun and Gaston contend, respectively, that the trial court erred by granting summary judgment and a directed verdict. We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Calhoun's Claim

After the incident and prior to filing his negligence suit against Appellee, Calhoun filed a claim for workers' compensation benefits with the Texas Workers' Compensation Commission. After a benefit contested case hearing on April 28, 2004, the TWCC hearing officer found that Appellee had workers' compensation insurance with Texas Mutual Insurance Company and decided that

2

Claimant [Calhoun] did not sustain a compensable injury on October 24, 2003. Claimant did not have [a] disability resulting from an injury sustained on October 24, 2003; in any event, since there is no compensable injury there can be no disability. At the time of the claimed injury on October 24, 2003, F. Hall Mowing was Claimant's employer for purposes of the Texas Workers' Compensation Act.

The hearing officer found that the workers' compensation carrier was not liable for benefits.

In the trial court, Appellee filed a partial second motion for summary judgment.[3] Appellee asserted several grounds for summary judgment, including that it was entitled to summary judgment based on the exclusive remedy provision of the workers' compensation statute. Calhoun and Gaston filed a response to Appellee's motion. The trial court granted summary judgment for Appellee and ordered that Calhoun take nothing on his cause of action against Appellee.

### B. Gustine's Claim

The remaining claim, Gustine's negligence claim against Appellee, proceeded to trial.[4] During the trial, Gustine's deposition and Calhoun's deposition were read to the jury, and Devin Hall, the son of the owner of Appellee, gave live testimony.

---

[3]Appellee had previously filed a motion for summary judgment and, in the alternative, no-evidence motion for summary judgment, and the trial court had denied that motion.

[4]Gustine did not make a claim for workers' compensation.

3

Gustine represented that he was a very experienced, safety-conscious, good welder and cutter. His understanding was that he was acting as a contractor on Appellee's jobs; Appellee told him what the job was, and he did it on his own. Gustine decided exactly how to do the cutting and torching. Gustine knew that he needed to be careful when he used the cutting torch to not let the sparks fly onto anything.

He said that the fire started about twenty or thirty minutes after he and Calhoun finished using the cutting torch. When the fire broke out, Calhoun said that they needed to get off the scissor lift[5]—because it was slow—and Gustine jumped first. Gustine broke his hip, twisted his ankle, and hit his head on the concrete. Gustine said that he did not know how the fire started; he suspected a power saw might have caused the fire because a worker had been using a power saw about twenty minutes before the fire started and because Gustine saw sparks flying from the saw.

Gustine did not know how much he was claiming in damages. He said that he had not been reporting income to the IRS because he did not have any income after paying expenses.

Calhoun testified that the day before the accident, a representative of Appellee came to Gustine's trucking company and said that he had some cutting

---

[5]Gustine testified that Devin's father (referred to herein as "Mr. Hall") had told him to use the scissor lift.

4

jobs for Gustine and Calhoun.[6]  Calhoun recalled that he arrived at the jobsite the next day around 10:00 or 11:00 a.m.  Mr. Hall, Devin, and several of Appellee's employees were on the jobsite, along with a roofing company that was working on the roof of the switch gear housing building.

Calhoun said that Mr. Hall told them to start working on the backside of the building and that when he and Gustine had finished, Mr. Hall brought them to the front side.  However, Calhoun said that Devin was the main person who told him and Gustine what to do.  Devin used a big forklift to hold up the pipes and then told Calhoun and Gustine where to cut the pipes.  Calhoun agreed, however, that the details on how to cut the pipe were left up to him and Gustine.  Devin charged the battery on the scissor lift and told Calhoun and Gustine to use it.[7]  Calhoun said that the scissor lift was old, rusty, and slow but that they had been using it for two to three hours before the fire.  Prior to the fire, Calhoun had cut two large water pipes with a cutting torch that was already there when he had arrived.

Calhoun said that at around 2:00 p.m., someone working for Appellee was up on a forklift using a gas saw to cut pipes when a blaze broke out.  Calhoun and Gustine decided to jump off the scissor lift because it was going to take too

---

[6]The job at UTA was the first time that year that he and Gustine had worked for a company; in the past, Gustine had paid him in cash a portion of whatever Gustine was paid.

[7]Calhoun said that he did not know who owned the scissor lift.

5

long to ride it to the ground.[8]  Calhoun said that Gustine jumped backwards off the lift because his shirt arm had caught on fire.[9]  After the fall, Devin came over and helped Gustine.  At the time of his deposition, Gustine still had a limp from the fall and was taking pain pills every day.

When asked about the cause of the fire, Calhoun said that he did not know what had caused the fire, but that it could not have been him or Gustine because the fire started on the roof, and he and Gustine were at least four feet from the roof.  Calhoun said that he had used a cutting torch thousands of times, so no one had to tell him to be careful because sparks could fly; he also knew that if sparks landed on any material, it could start a fire.

Devin Hall testified that his mother owns Appellee and that he serves as the project manager.  With regard to the project at UTA, Appellee was tasked with dismantling a building, including cutting the pipes.[10]  Devin said that Mr. Hall was at the jobsite helping and that his cousin Corwin Moss was working as a floater on the project.

The day before the fire, Devin had seen roofers working on the switch gear housing building (the building that Appellee was demolishing was over this

---

[8]Calhoun said that they did not test the scissor lift afterwards because "it was burnt, burnt up."

[9]Calhoun said that he never saw fire on Gustine; he just heard about it later.

[10]Devin testified that Appellee had never done any work related to roofing.

6

building); they were putting up temporary structures so that they could lay the roof. That same day, Devin met with the roof contractors and was instructed that cutting and welding activities should stop while the roof contractors were working so that cutting and welding debris would not fall onto the roof while the roof was under construction. Devin said that there was no discussion about a risk of fire.

The morning of the fire, Devin met with a representative of the general contractor to discuss whether it was permissible to proceed further with cutting pipes that were over and around the roof. Devin walked around and pointed out the pipes that were going to be cut. Because the roof was substantially covered, the general contractor's representative said to "get after it." The representative came back by later that day and advised that he was pleased with the work. Devin testified that he did not have notice of any problems.

Devin said that Gustine and Calhoun periodically performed welding for him and that he knew Gustine had twenty to thirty years of experience in cutting and torching.[11] He offered each of them $100 per day to work on the project at UTA.[12] Gustine and Calhoun were supposed to start on the morning of October 24, 2003, but arrived between 1:00 and 2:00 p.m.; prior to that time, Devin and Corwin had been cutting pipe with the power saw. Devin told Gustine and Calhoun which pipes needed to be cut.

---

[11]Devin testified that Appellee does not own any cutting or torching equipment or a scissor lift.

[12]Devin testified that he never discussed putting Gustine on the payroll.

7

Devin saw the fire start at 5:15 p.m. Gustine was cutting a support hanger on a twelve- or thirteen-inch pipe, and Devin was holding it up with a telehandler when sparks flew.[13] He understood that Gustine had broken his hip and received burns on his back as a result of jumping from the scissor lift when the fire broke out.

At the close of the evidence, Appellee made a motion for directed verdict, arguing that there was no evidence to support a negligence claim and that there was no evidence that Appellee had notice or knowledge of any dangerous conditions. The trial court granted the motion.

### III. SUMMARY JUDGMENT ON CALHOUN'S CLAIM WAS PROPER

In the first issue, Calhoun argues that the trial court erred by granting summary judgment for Appellee on his negligence claim. Calhoun argues in part that the exclusive remedy provision is an affirmative defense that must be asserted and proven by the employer and that Appellee did not establish as a matter of law that it was Calhoun's employer.

We review a summary judgment de novo. *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 848 (Tex. 2009). We consider the evidence presented in the light most favorable to the nonmovant, crediting evidence favorable to the nonmovant if reasonable jurors could and disregarding evidence contrary to the nonmovant unless reasonable jurors could not. *Id.* We

---

[13]Devin testified that the power saw had not been used since 3:00 p.m.

8

indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *20801, Inc. v. Parker*, 249 S.W.3d 392, 399 (Tex. 2008). A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense. *Chau v. Riddle*, 254 S.W.3d 453, 455 (Tex. 2008); *see* Tex. R. Civ. P. 166a(b), (c). To accomplish this, the defendant-movant must present summary judgment evidence that establishes each element of the affirmative defense as a matter of law. *Ryland Group, Inc. v. Hood*, 924 S.W.2d 120, 121 (Tex. 1996).

The Texas Workers' Compensation Act's exclusive remedy provision provides that "[r]ecovery of workers' compensation benefits is the exclusive remedy of an employee covered by workers' compensation insurance coverage . . . against the employer . . . for . . . a work-related injury sustained by the employee." Tex. Lab. Code Ann. § 408.001(a) (Vernon 2006). Because the remedy provided by the TWCA is exclusive, an employee has no alternative right of action against his employer for injuries sustained in the course and scope of employment. *See id.*; *McAlister v. Medina Elec. Co-op., Inc.*, 830 S.W.2d 659, 663 (Tex. App.—San Antonio 1992, writ denied). Thus, the exclusive remedy provision of the TWCA bars common law claims for negligence. *Walls Reg'l Hosp. v. Bomar*, 9 S.W.3d 805, 806–07 (Tex. 1999). Moreover, the exclusive remedy provision of the TWCA is an affirmative defense. *Morales v. Martin Res., Inc.*, 183 S.W.3d 469, 471 (Tex. App.—Eastland 2005, no pet.).

Calhoun argues on appeal that Appellee did not prove in the trial court that it was his employer. Calhoun's arguments are based on Appellee's denial before the TWCC that it was Calhoun's employer. Despite Appellee's denial that it was Calhoun's employer, the TWCC found that Appellee was Calhoun's employer on the date he was injured. After receiving the hearing officer's decision, Calhoun had fifteen days to request the appeals panel to review the hearing officer's decision, *see* 28 Tex. Admin. Code § 143.3 (2009) (Tex. Dep't of Ins., Div. of Workers' Comp.), but nothing in the record before us indicates that Calhoun challenged the hearing officer's decision. Over fourteen months after the hearing officer issued his decision and it became final, Calhoun filed the present suit in the trial court.

In the trial court, Appellee moved for partial summary judgment on Calhoun's negligence claim, arguing that it was barred by the TWCA's exclusive remedy provision and relying upon the unchallenged hearing officer's decision as summary judgment evidence. Appellee also attached the hearing officer's findings of fact and conclusions of law as summary judgment evidence, including the findings that Appellee had approved workers' compensation insurance and that Appellee was Calhoun's employer on the date of the accident. Thus, the summary judgment evidence conclusively established that Appellee possessed an approved workers' compensation insurance policy covering the payment of workers' compensation benefits to its employees on the date of Calhoun's accident, that Calhoun was Appellee's employee on the date of the accident, and

10

that Calhoun filed a claim for workers' compensation benefits.[14]  Appellee thus conclusively proved its affirmative defense—that the exclusive remedy provision of the TWCA precluded Calhoun's suit for negligence against Appellee. *See Chau*, 254 S.W.3d at 455; *Walls Reg'l Hosp.*, 9 S.W.3d at 808 (holding that because summary judgment record established that plaintiffs' injuries occurred in the course of their employment, the TWCA bars plaintiffs' negligence action against the hospital); *Hodges v. Tex. TST, Inc.,* 303 S.W.3d 880, 882 (Tex. App.––Eastland 2009, no pet.) (holding that because Hodges was company's employee and because company produced evidence that it had workers' compensation insurance coverage, a claim for benefits was Hodges's exclusive remedy against company); *Stewart v. Lexicon Genetics, Inc.*, 279 S.W.3d 364, 368–70 (Tex. App.––Beaumont 2009, pet. denied) (upholding the granting of summary judgment for appellee on ground that plaintiff's negligence claims were barred by the exclusive remedy provision of the TWCA) *Dickson v. Silva*, 880 S.W.2d 785, 788 (Tex. App.––Houston [1st Dist.] 1993, writ denied) (holding that because workers' statutory remedy under the TWCA was exclusive, summary judgment in favor of company was proper).[15]  We therefore hold that that trial

---

[14]Calhoun did not challenge in the trial court, and does not challenge on appeal, the conclusion that Appellee had workers' compensation insurance that would have covered him had the TWCC determined that he had suffered a compensable injury or the fact that he had filed a claim for benefits under the TWCA.

[15]Appellee's second partial motion for summary judgment also asserted res judicata as a ground for summary judgment.  We alternatively hold that it  was

11

court did not err by granting Appellee's second partial motion for summary judgment on Calhoun's negligence claim based on the exclusive remedy provision of the TWCA or, alternatively, on res judicata grounds. We overrule the first issue.

## IV. DIRECTED VERDICT PROPERLY GRANTED

In the second issue, Gaston argues that the trial court erred by granting Appellee's motion for directed verdict. A directed verdict is proper only under limited circumstances: (1) when the evidence conclusively establishes the right of the movant to judgment or negates the right of the opponent, or (2) when the evidence is insufficient to raise a material fact issue. *See Prudential Ins. Co. of Am. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000); *Farlow v. Harris Methodist Fort Worth Hosp.*, 284 S.W.3d 903, 919 (Tex. App.—Fort Worth 2009, pet. denied). In reviewing a directed verdict, we must credit favorable evidence if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

If the question to be decided is whether the losing party at trial raised a material fact issue, we consider all the evidence in a light most favorable to the party against whom the verdict was instructed and disregard all contrary evidence and inferences if a reasonable factfinder could; we give the losing party

---

entitled to summary judgment on Calhoun's negligence based on res judicata. *See Igal v. Brightstar Info. Tech. Group, Inc.*, 250 S.W.3d 78, 93 (Tex. 2008) (holding that the doctrine of res judicata bars a plaintiff from pursuing relief in a court of law after obtaining a final decision in TWCC for the same transaction).

12

the benefit of all reasonable inferences created by the evidence. *Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*, 136 S.W.3d 227, 234 (Tex. 2004). If we determine that any conflicting evidence of probative value raises a material fact issue on any theory of recovery, then the directed verdict is improper because such an issue is for the jury to resolve. *Szczepanik v. First S. Trust Co.*, 883 S.W.2d 648, 649 (Tex. 1994).

Gaston pleaded a negligent activity claim against Appellee. On appeal, Gaston challenges the directed verdict by asserting that Appellee's negligent activity was permitting "demolition activities at the job site while a roofing contractor was working in the same area using extremely flammable adhesives" on the roof of the switch gear housing building. Recovery on a negligent activity theory requires the plaintiff to have been injured by or as a contemporaneous result of the activity itself, rather than by a condition created by the activity. *Keetch v. Kroger Co.*, 845 S.W.2d 262, 264 (Tex. 1992) (citing *Redinger v. Living, Inc.*, 689 S.W.2d 415, 417 (Tex. 1985)). If the injury was caused by a condition created by the activity rather than the activity itself, a plaintiff is limited to a premises liability theory of recovery. *See, e.g., Crooks v. Moses*, 138 S.W.3d 629, 639 (Tex. App.—Dallas 2004, no pet.).

The Texas Supreme Court has recognized that a negligent activity cause of action encompasses a malfeasance theory based on affirmative, contemporaneous conduct by the landowner (or person in charge of the property) that caused the injury as opposed to a premises liability cause of action that

13

encompasses a nonfeasance theory based on the owner's failure to take measures to make the property safe. *Del Lago Partners, Inc. v. Smith*, 307 S.W.3d 762, 776 (Tex. 2010). Negligence in the context of a negligent activity claim means simply doing or failing to do what a person of ordinary prudence in the same or similar circumstances would have not done or done. *Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 753 (Tex. 1998).

Giving Gaston, as the losing party, the benefit of all reasonable inferences created by the evidence, no evidence was presented at trial that "flammable adhesives" were utilized in building the roof of the switch gear housing building. Additionally, Devin testified that neither he nor the roofing contractors mentioned any risk of fire in their conversations. Moreover, the record affirmatively reflects that Devin was told by the roofing contractors to go ahead with the cutting activities because the switch gear housing building's roof was almost totally covered. Thus, there is simply no evidence that Appellee engaged in any negligent activity.

Moreover, Gustine was an experienced welder and cutter. He testified that he knew that he needed to be careful every time he used a cutting torch to not let the sparks fly onto anything. There is simply no evidence that Gustine's and Calhoun's use of the cutting torch here was any more dangerous or constituted a negligent activity any more than any other time they used a cutting torch.

And finally, Gustine's injuries were not proximately caused by the negligent activity he alleged. Instead, Gustine was injured when he jumped off the scissor

lift that was eighteen feet in the air and landed on the concrete floor. The negligent activity Gaston relies upon on appeal—that "Appellee was negligent in allowing its activities to occur in close proximity to the roofers using flammable adhesives on the roof"—was not the proximate cause of Gustine's injuries; his jumping off the scissors lift was.[16]

Considering all the evidence in a light most favorable to Gaston, we hold that the trial court did not err by granting Appellee's motion for directed verdict on Gaston's claim of negligence because there was no evidence to support a negligent activity claim.[17] *See Coastal Transp. Co.*, 136 S.W.3d at 234–35; *Ibarra v. Hines Land Group, Ltd.*, No. 10-09-00231-CV, 2010 WL 2869814, at *6 (Tex. App.—Waco July 21, 2010, no pet.) (mem. op.) (holding that plaintiffs could not establish premises liability under either a premises defect or negligent activity theory). We therefore overrule the second issue.

---

[16]Devin testified that Appellee did not own the scissors lift and this testimony is not controverted.

[17]To the extent that Gaston's pleadings may be construed as stating a premises liability claim, Gaston did not urge on appeal any error by the trial court in granting a directed verdict concerning that claim.

15

## V. Conclusion

Having overruled both of Appellants' issues, we affirm the trial court's judgment.

SUE WALKER
JUSTICE

PANEL:  GARDNER, WALKER, and GABRIEL, JJ.

DELIVERED:  January 13, 2011